# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### (HEARD AT CHATTANOOGA)

**FILED**

**October 6, 1997**

Cecil Crowson, Jr.
**Appellate Court Clerk**

**FOR PUBLICATION**

| | |
|---|---|
| STATE OF TENNESSEE, | ) |
| | ) **Filed:** October 6, 1997 |
| Appellant | ) |
| | ) Hon. Ben W. Hooper, |
| | ) Judge |
| Vs. | ) |
| | ) COCKE COUNTY |
| MERLIN EUGENE SHUCK, | ) |
| | ) Supreme Court |
| Appellee. | ) No. 03-S01-9607-CC-00071 |
| | ) |

FOR STATE/APPELLANT

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Gordon Smith
Associate Solicitor General

Michael J. Fahey, II
Assistant Attorney General
Nashville, Tennessee

Alfred C. Schmutzer, Jr.
District Attorney General

James B. Dunn
Assistant District Attorney General
Fourth Judicial District
Sevierville, Tennessee

FOR DEFENDANT/APPELLEE:

Charles R. Terry
Denise S. Terry
Morristown, Tennessee

Thomas F. Bloom
Nashville, Tennessee
(Appeal Only)

# O P I N I O N

COURT OF CRIMINAL APPEALS
AFFIRMED.                                         DROWOTA, J.

The defendant, Merlin Eugene Shuck, was convicted of one count of

solicitation to commit first degree murder and two counts of solicitation to commit especially aggravated kidnaping.  The defense theory at trial was entrapment, and in support of that defense, Shuck sought to introduce expert testimony from a neuropsychologist that he had suffered a cognitive decline and significant deterioration of his cognitive abilities which rendered him more susceptible to inducement than the average person.  The trial judge refused to admit the testimony finding that it would invade the province of the jury.  Concluding that the trial court abused its discretion in excluding the testimony, the Court of Criminal Appeals reversed the convictions and ordered a new trial.  Thereafter, we granted the State permission to appeal to consider whether expert psychological testimony about a defendant's susceptibility to inducment is admissible under Tennessee law to establish entrapment.[1]

We conclude that expert testimony about a defendant's susceptibility to inducement generally is admissible if it "will substantially assist the trier of fact to understand the evidence or to determine a fact in issue,"[2] and is not objectionable merely because the expert's opinion embraces an ultimate issue to be decided by the trier of fact.[3]  Though the admissibility of expert testimony in a specific case is a decision which rests in the discretion of the trial judge, that decision may be overturned on appeal upon a showing of abuse of discretion.  For the reasons that

---

[1]Oral arguments were heard in this case on April 15, 1997, in Chattanooga, Hamilton County, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

[2]Tenn. R. Evid. 702.

[3]Tenn. R. Evid. 704; In Tennessee, the only ultimate issue about which an expert explicitly cannot offer an opinion is whether the defendant was or was not sane at the time of commission of the criminal offense.  Tenn. Code Ann. § 39-11-501(c)(1996 Supp.).

follow, we conclude that the trial court abused its discretion by excluding the expert testimony proffered by the defendant and that the error was not harmless. Consequently, we affirm the judgment of the Court of Criminal Appeals reversing the convictions and remanding for a new trial.

## BACKGROUND

The defendant, Merlin Shuck, has worked as a practicing veterinarian in Morristown for over thirty years and has been very active in civic and community affairs. In January of 1992, Shuck hired Kathy Waters as an assistant in his veterinarian clinic. Waters had moved to Morristown from New York in 1991 with her husband, David Waters. Prior to moving to Tennessee, Kathy Waters had been successfully treated for a cocaine addiction, but she had an alcohol problem while she was employed by the defendant.

During her employment, the defendant and Ms. Waters developed a relationship beyond that of employer-employee. Though the precise nature of their relationship is not clear, the record shows that the defendant, while attempting to help Waters with her drinking problem, tried to get her involved in his church, persuaded her to be counseled by his pastor, provided her with airline tickets to Florida to seek a reconciliation with her former husband and children, assisted her in securing an apartment after she left David Waters, and provided her with money to buy furniture and pay debts.

The defendant tried to manage Waters' personal relationships as well. Witnesses for the State testified that when Waters missed work because of

sickness, Shuck would go to her apartment, walk in unannounced, and berate Waters and her husband for consuming alcohol. When Shuck learned that Waters had developed a social relationship with Robert Cadman after leaving her husband, he continued the unusual conduct by entering their apartments unannounced, and berating the two of them. When Waters left his employ, the defendant closely monitored her activities and repeatedly contacted her subsequent employers and acquaintances demanding to know her whereabouts. Shuck even asked the local cab company to refuse to transport Waters either to Cadman's apartment or the liquor store. According to the owner of the cab company, Shuck, who was a city councilman, threatened her with political reprisal if the company provided Waters with transportation without his knowledge. On one occasion, when he was unable to locate Waters, Shuck posted "Fugitive-at-Large" posters, and when he found her, Shuck locked Waters in his clinic so she would "dry-out."

The investigation which ended with the indictments for solicitation began as a result of an incident on May 18, 1993 when Shuck broke into Cadman's apartment, and was in the process of forcibly removing Waters, when Cadman telephoned Emergency 911 for assistance. The Morristown Police Department initiated an investigation, taking a statement from both Waters and Cadman about the incident and various other alleged physical assaults by the defendant upon Waters. At that time neither Waters nor Cadman wished to prosecute the defendant.

Because Shuck was a city councilman, the investigation was transferred to

the local district attorney's office at the end of May of 1993. An investigator was assigned to the case, but discovered no additional evidence until the end of the summer when the investigator first spoke with Cadman, who gave a detailed, three-page statement accusing the defendant of assault, breaking and entering, and abuse of power. Thereafter, the investigator visited Waters in the Knox County jail, and was told that Judy McDaniel, who was employed by the defendant, would have further information about the incidents.

In the meantime, the allegations and events had come to the attention of Lawrence Myers, editor of a local newspaper. Myers interviewed Waters and Cadman and, beginning on August 24, wrote a number of articles about the situation. In the articles, Myers printed a transcript of the 911 telephone call and recounted the allegations which Waters and Cadman had made against Shuck.

The official investigation continued, and on September 6, the investigator went to McDaniel's home and took a statement from her concerning Waters' allegations. Sometime after the interview, McDaniel notified the investigator that the defendant had made statements which could be construed as threats against Waters. McDaniel thereafter agreed to wear a body wire to her job each day at the defendant's clinic.

Over a period of approximately five weeks, McDaniel taped various conversations at the clinic. On December 1, McDaniel informed the investigator that the defendant, in an unrecorded conversation, had sought her help and offered to forgive a debt she owed him if she would agree to help him get rid of

Kathy and David Waters. As instructed by the investigator, McDaniel engaged the defendant in a taped conversation in which he confirmed the offer the next day.

Four days later, on December 6, the investigator and McDaniel met with officials from the Tennessee Bureau of Investigation (T.B.I.), and arranged for an undercover T.B.I. agent to pose as a hit man in a meeting that McDaniel was to set up with the defendant. McDaniel returned to work and offered to set up a meeting between the defendant and the hit man, who she portrayed as a friend of hers in Cocke County. The defendant discussed the possibility of the meeting with varying degrees of certainty. At one point, he told McDaniel that he "may need" the hit man but was not sure when. The defendant, thereafter, increased the number of people he wanted killed, adding Lawrence Myers as a third target, but he lowered the price he was willing to pay McDaniel for her "help." At another point, the defendant indicated that he would do the crime himself. A short time later he expressed renewed interest in the meeting, but said he was too busy to discuss the possibility of the meeting that week, and suggested that the "hit man" call next week. The defendant said that if a meeting or agreement could not be worked out "that's fine, no problem."

The defendant told McDaniel on December 15, that it was a bad time and he could not meet that day. The next day, Thursday, December 16, the defendant said, "let's see what the situation is. He might not want to do it under my requirements." Shuck, on one occasion, said the hit man "may not want to do it that way" and "that's all right." However, later that same day, in a conversation that was not tape-recorded, the defendant agreed to meet with the "hit man" that

-6-

evening, Thursday, December 16, 1993. As arranged, the defendant met with the undercover agent, paid him five hundred dollars as partial payment for the murder of Myers, and said that the kidnapping and eventual murder of Kathy and David Waters would be deferred until after Christmas. The meeting between the defendant and the undercover agent was videotaped and the defendant was arrested as he left the hotel room where the meeting transpired.

The primary theory of defense throughout the trial was entrapment. In order to support this theory, the defense sought to introduce expert testimony from Dr. Eric Engum, a neuropsychologist, that the defendant suffered from a cognitive decline, and the significant deterioration of the defendant's cognitive abilities rendered him more susceptible to the persuasion of others to commit a crime, and particularly susceptible to persuasion of a trusted employee and confidante. The trial judge ruled that the testimony was not admissible because it would invade the province of the jury.

Based on the other proof in the case, however, the trial judge found that the defendant had raised a viable defense of entrapment and instructed the jury on that defense. The jury found the defendant guilty of one count of solicitation to commit first degree murder and two counts of solicitation to commit especially aggravated kidnaping.[4] The defendant appealed, raising several issues. The Court of Criminal Appeals reversed the convictions, concluding that the trial court

_____

[4]The defendant was sentenced to serve ten years on his conviction for solicitation to commit first degree murder and six years on each conviction for solicitation to commit especially aggravated kidnaping. The sentences were ordered to run concurrently for an effective sentence of ten years.

erred in excluding the expert testimony on the entrapment issue. Thereafter, we granted the State's application for permission to appeal to consider this important evidentiary question. For the reasons that follow, we affirm the judgment of the Court of Criminal Appeals.

## ENTRAPMENT DEFENSE

A proper understanding of the evidentiary issue in this appeal requires that we briefly review the development and current status of entrapment as a defense in Tennessee. First recognized by the Supreme Court in <u>Sorrells v. United States</u>, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), the defense of entrapment has been described as "virtually unique to the criminal jurisprudence of the United States." <u>United States v. Webster</u>, 649 F.2d 346, 348 (5th Cir. 1981), quoting G. Fletcher, <u>Rethinking Criminal Law</u>, § 7.3.B, at 541 (1978). Prior to 1980, Tennessee was the only jurisdiction in the United States which had not explicitly recognized entrapment as a defense. <u>State v. Jones</u>, 598 S.W.2d 209, 216 (Tenn. 1980). Finding that the defense was being applied in decisional law, this Court in <u>Jones</u> expressly recognized entrapment[5] as a valid affirmative defense with one exception. Reasoning that "one may not be solicited into soliciting," the <u>Jones</u> Court refused to recognize entrapment as a defense to the crime of solicitation. <u>Id</u>. at 220.

---

[5]The <u>Jones</u> Court defined entrapment as follows:
> [A]s a general rule of criminal practice and procedure entrapment occurs when law enforcement officials, acting either directly or through an agent, induce or persuade an otherwise unwilling person to commit an unlawful act; however, where a person is predisposed to commit an offense, the fact that the law enforcement officials or their agents merely afford an opportunity does not constitute entrapment.

<u>Id</u>. at 220 (internal citations omitted).

Following this Court's decision in Jones, the law of entrapment remained essentially unchanged until the General Assembly, as part of the Criminal Sentencing Reform Act of 1989, codified all the available defenses to prosecution in Tennessee. Entrapment was included as a general defense to prosecution for all offenses and the exception for the crime of solicitation, adopted by Jones, was not a part of the enactment. See State v. Latham, 910 S.W.2d 892, 895-96 (Tenn. Crim. App. 1995). Therefore, entrapment is recognized in Tennessee as a general defense[6] to solicitation.

According to Tenn. Code Ann. § 39-11-505 (1991), entrapment occurs "when law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so."[7] Under this statute, inducement and predisposition are the crucial factors for consideration. There are two recognized tests for determining entrapment, the objective and subjective test. The objective test is the minority rule under which the fact finder focuses on the nature of the police activity involved, without reference to the predisposition of the defendant. Jones, 598 S.W.2d at 219-20. The subjective test is applied by a majority of jurisdictions and requires the fact finder to focus on the subjective intent of the defendant to determine whether the defendant was predisposed to commit the criminal act, with law enforcement officials furnishing only the opportunity, or

---

[6]To the extent that Jones, supra, viewed entrapment as an affirmative defense, it is no longer applicable. State v. Shropshire, 874 S.W.2d 634, 638 (Tenn. Crim. App. 1993).

[7]A defendant who intends to rely upon entrapment must give the district attorney general a notice comparable to that required for an insanity defense under Rule 12.2, Tenn. R. Crim. P. Tenn. Code Ann. § 39-11-505 (1991).

whether the defendant was an innocent person induced by police into committing the criminal offense.  <u>Jones</u>, 598 S.W.2d at 219-220; <u>Latham</u>, 910 S.W.2d at 896; 21 Am.Jur.2d <u>Criminal Law</u> § 205 (1976).

Entrapment, as described by Tenn. Code Ann. § 39-11-505 (1991), requires the jury to focus on the subjective intent of the defendant to determine inducement and predisposition; therefore, Tennessee applies the subjective test of entrapment.[8]  Establishing susceptibility to inducement and persuasion was the purpose for which the defendant sought to introduce the expert psychological testimony which is at issue in this appeal.

## ADMISSIBILITY OF EXPERT TESTIMONY

The State does not contend that expert testimony about a defendant's unique susceptibility to inducement is never admissible.  Instead, the State contends that the trial court in this case did not abuse its discretion by excluding such expert proof.  Assuming, however, that exclusion of the testimony was error, the State argues that the error was harmless because the prosecution proved, beyond a reasonable doubt, that the defendant was predisposed to commit the offense.

While conceding that the decision of whether to admit expert testimony is generally within the discretion of the trial court, the defendant argues that the trial court abused its discretion in this case because the only reason given by the trial

_____

[8]The subjective test was also adopted by this Court in <u>Jones</u>, <u>supra</u>.  <u>Id</u>. 220-21.

-10-

court for excluding the evidence, that it would invade the province of the jury, is not a valid basis for exclusion under Tennessee law.   The error was prejudicial, the defendant asserts, because the proof does not establish the defendant's predisposition beyond a reasonable doubt.

The admissibility of expert testimony on the defendant's unusual susceptibility to entrapment is a question of first impression in this Court. However, several federal and state courts have addressed the issue and concluded that the admissibility of such proof is subject to the applicable rules of law and evidence which generally govern the admission of expert testimony.  <u>See e.g.</u> <u>People v. Masor</u>, 578 N.E.2d 1176 (Ill. App. 1991); <u>State v. Woods</u>, 484 N.E.2d 773 (Ohio Com.Pl. 1984).

For example, despite concluding that the trial court acted within its discretion in excluding expert testimony on a defendant's susceptibility to inducement because the defendant had not given the required notice until the sixth day of trial, the Sixth Circuit, in <u>United States v. McLemon</u>, 746 F.2d 1098 (6th Cir. 1984), stated that "expert testimony concerning a defendant's predisposition may be invaluable in an entrapment case."  <u>Id</u>. at 1115.

In <u>United States v. Benveniste</u>, 564 F.2d 335 (9th Cir. 1977), the Ninth Circuit stated that an expert's testimony is generally admissible on the issue of the defendant's psychological susceptibility to inducement.  However, the court concluded that the trial court did not abuse its discretion by excluding the testimony proffered in that case on the grounds that it would "confuse the jury and

not shed any light on the issue." Id. at 339.

Likewise, in United States v. Newman, 849 F.2d 156, 165 (5th Cir. 1988), the Fifth Circuit concluded that when an entrapment defense is raised, expert psychiatric testimony is admissible to demonstrate that a mental disease, defect, or subnormal intelligence makes a defendant peculiarly susceptible to inducement if the expert demonstrates a proper factual foundation for the testimony, either through personal interviews with or psychological testing of the defendant. The trial court's exclusion of the evidence in that case was upheld, however, for several reasons including the defendant's failure to notify the government of his intention to offer the testimony until after the government had rested its case and defense counsel's failure to succinctly and clearly summarize the proffered testimony in a jury-out hearing. Id. at 165-66.

Perhaps the best statement of the relevance and general admissibility of such proof is contained in United States v. Hill, 655 F.2d 512 (3rd Cir. 1981). In that case, the Third Circuit reversed a district court's ruling that the testimony of a clinical psychologist was inadmissible to prove that the defendant's psychological profile, subnormal intelligence, and susceptibility to persuasion made him uniquely susceptible to inducement. The court concluded:

> Testimony by an expert concerning a defendant's susceptibility to influence may be relevant to an entrapment defense. An expert's opinion, based on observation, psychological profiles, intelligence tests, and other assorted data, may aid the jury in its determination of the crucial issues of inducement and predisposition. . . . A jury may not be able to properly evaluate the effect of appellant's subnormal intelligence and psychological characteristics on the existence of inducement or predisposition without the considered opinion of an expert.

-12-

> Accordingly, if the expert can reach a conclusion, based on an adequate factual foundation, that the appellant, because of his alleged subnormal intelligence and psychological profile, is more susceptible and easily influenced by the urgings and inducements of other persons, such testimony must be admitted as relevant to the issues of inducement and predisposition.

Hill, 655 F.2d at 516.


We agree with the decisions discussed above and conclude that the admissibility of expert testimony on a defendant's unusual susceptibility to inducement is governed, like other expert testimony, by the applicable rules of law and evidence. Therefore, our resolution of the issue in this case begins with the Tennessee Rules of Evidence. Rule 702, Testimony by experts, provides:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Under this evidentiary rule, the inquiry when determining the admissibility of expert opinion[9] testimony is will the proof "substantially assist the trier of fact to understand the evidence or to determine a fact in issue." See McDaniel v. CSX Transportation, Inc., __ S.W.2d __ (Tenn. 1997). Historically, expert testimony was admissible only upon a showing of necessity. Neil P. Cohen, Donald F. Paine, and Sarah Y. Sheppeard, Tennessee Law of Evidence, § 702.1, p. 354 (2d Ed. 1990). For example, in 1952 this Court held that in order for expert opinion testimony to be admissible, "the subject under examination must be one that requires that the court and jury have the aid of knowledge or experience such as

---

[9]Opinion testimony by lay witnesses generally is not admissible and is circumscribed by Tenn. R. Evid. 701.

men not specially skilled do not have, and such therefore as cannot be obtained from ordinary witnesses." Casone v. State, 246 S.W.2d 22, 26 (Tenn. 1952). While the substantial assistance standard of Rule 702, Tenn. R. Evid., is a relaxation of the common law necessity requirement, it is somewhat stricter than the comparable federal rule of evidence which permits expert opinion testimony upon a finding that it merely assists the trier of fact. Fed. R. Evid. 702; see also McDaniel, ___ S.W.2d at ___; Primm v. Wickes Lumber Co., 845 S.W.2d 768, 770 (Tenn. App. 1992); Weinstein, Rule 702 of the Federal Rules of Evidence is Sound: It Should Not Be Amended, 138 F.R.D. 631, 636 (1991).

Despite its tendency to substantially assist the jury, only expert opinion testimony which is based upon reliable facts or data is admissible in Tennessee. Rule 703, Tenn. R. Evid., permits reliance upon facts or data perceived by or made known to the expert at or before the hearing. Moreover, if of a type reasonably relied upon by experts in the particular field in forming opinions, the facts or data need not be admissible in evidence. However, Rule 703, unlike the comparable federal rule, provides that "[t]he court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness." In this respect, our rule expresses a greater concern with the bases of expert testimony than does Fed. R. Evid. 703. See McDaniel, __ S.W.2d at __; Omni Aviation v. Perry, 807 S.W.2d 276 (Tenn. App. 1990); R. Banks, Some Comparisons Between the New Tennessee Rules of Evidence and the Federal Rules of Evidence, Part II, 20 Mem.S.U.L.Rev. 499, 559 (1990).

In contrast, Tennessee Rule of Evidence 704 is more lenient than its

federal counterpart with respect to the admissibility of opinion testimony on an ultimate issue to be decided by the trier of fact. The federal rule specifically prohibits expert testimony regarding the criminal defendant's mental state or condition as an element of the crime. Fed. R. Evid. 704(b). Under Tennessee law, "[t]estimony in the form of an opinion or inference <u>otherwise admissible</u> is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Tenn. R. Evid. 704 (emphasis added).[10] With respect to expert testimony, this rule is consistent with Tennessee common law. For example, this Court in 1977 held that "an expert's opinion is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact, so long as it is helpful to the court." <u>City of Columbia v. C.F.W. Const. Co.</u>, 557 S.W.2d 734, 742 (Tenn. 1977).

Of course, expert opinion testimony which embraces an ultimate issue must be "otherwise admissible" and not objectionable on other grounds. <u>See Tennessee Law of Evidence</u>, § 704.3, p. 365-66. Indeed, this Court, in <u>State v. Ballard</u>, 855 S.W.2d 557, 562 (Tenn. 1993), concluded that expert testimony about symptoms of post-traumatic stress syndrome exhibited by victims of child abuse does not "substantially assist" a jury because it attempts to evaluate the credibility of witnesses, a task which a jury is capable of performing without expert testimony, and it is not reliable proof as to the question of whether a defendant committed the specific crime of which he or she is accused. <u>Id</u>. at 562; <u>see also</u> Tenn. R. Evid. 703. Under Tennessee law, therefore, expert opinion testimony

---

[10]See Note 3, <u>surpa</u>.

which embraces an ultimate issue of fact is not automatically admissible.  Such testimony is simply not subject to exclusion on the sole basis that it embraces an ultimate issue to be decided by the trier of fact.  As with most other evidentiary questions, the admissibility of expert opinion testimony is a matter which largely rests within the sound discretion of the trial court.  The trial court's decision is not insulated from appellate review, however, and may be overturned  on appeal upon a showing that the trial court abused its discretion.  Ballard, 855 S.W.2d at 562.

Considering the foregoing rules of evidence which govern the admissibility of expert proof in Tennessee, we must now determine whether the trial court in this case abused its discretion by excluding the proffered expert testimony about the defendant's susceptibility to inducement.  Recently we considered the abuse of discretion standard in another context and observed:

> Discretion denotes the absence of a hard and fast rule.  When invoked as a guide for judicial action, it requires that the trial court view the factual circumstances in light of the relevant legal principles and exercise considered discretion before reaching a conclusion. Discretion should not be arbitrarily exercised.  The applicable facts and law must be given due consideration.

Ballard v. Herzke, 924 S.W.2d 652, 661 (Tenn. 1996) (internal citations omitted) (discussing the standard in the context of a trial court's decision to modify a protective order).  We concluded that an appellate court should find an abuse of discretion when it appears that a trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.  Id.

-16-

Applying that standard to the facts in this case, we agree with the Court of Criminal Appeals that the trial court abused its discretion by excluding the expert psychological testimony proffered by the defendant. As the defendant contends, the trial court excluded the proffered expert testimony on the sole basis that it embraced an ultimate issue of fact to be decided by the jury. From our review of the offer of proof, Dr. Engum did not seek to offer opinion testimony on the ultimate issue of whether the defendant was entrapped. Instead, if permitted to do so, Dr. Engum would have offered opinion testimony, based upon observation, intelligence tests, and other assorted data, that the defendant had suffered a cognitive decline and significant deterioration of his cognitive abilities which rendered him more susceptible to inducement and persuasion than the average person. Even assuming that Dr. Engum had sought to offer opinion testimony on the ultimate issue of entrapment, such testimony is not objectionable if otherwise admissible. As we have previously explained, expert testimony otherwise admissible is not subject to exclusion solely because it embraces an ultimate issue of fact to be decided by the jury. Tenn. R. Evid. 704. In this case, the trial court's discretionary decision to exclude the expert testimony was based upon an incorrect legal standard.

The record does not support the State's contention that the "trial court could have reasonably concluded that the doctor's testimony would not have 'substantially assisted' the jury and, in fact, could confuse it on the ultimate question of inducement." Indeed, nothing in the record even hints that the trial court based its decision on these grounds. The trial court acknowledged that Dr. Engum was qualified, stating that "he is as qualified as anybody I know to testify."

-17-

Nothing in the record indicates that the defendant failed to provide notice to the State as required by the statute. There is no reason to assume that Dr. Engum's testimony would be confusing to the jury as he very clearly and carefully summarized the testimony in the offer of proof. There is no suggestion that the facts or data upon which he based his testimony were unreliable or untrustworthy. There is simply no reason to conclude that the expert testimony failed the substantial assistance test of Rule 702, Tenn. R. Evid. Indeed, as the Third Circuit recognized in Hill, supra, a jury may not be able to properly evaluate the effect of a defendant's cognitive and psychological characteristics on the existence of inducement or predisposition without the considered opinion of an expert. Id. at 516. Accordingly, we find that the trial court abused its discretion by excluding the expert proof.

Having so concluded, we must next determine whether the trial court's failure to admit the testimony is an error which affirmatively appears to have affected the verdict. Tenn. R. Crim. P. 52(a). The State argues that the error was harmless because the proof shows, beyond a reasonable doubt, that the defendant was predisposed to commit the offense. We disagree.

Factors relevant to determining a defendant's predisposition include the character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by law enforcement officials; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense which was overcome only by repeated inducement or persuasion by law

enforcement officials or agents; the nature of inducement or persuasion engaged in by law enforcement officials; and any other direct or circumstantial evidence that the accused was ready and willing to engage in the illegal conduct in question. In determining predisposition a court or jury should consider the totality of the circumstances. Jones, 598 S.W.2d at 220; McLernon, 746 F.2d at 1112.

Even though the defendant's proffered expert testimony was excluded, based on the other proof introduced, the trial court charged the jury on the issue of entrapment. Moreover, a mere reading of the cold record reveals that the issues of inducement and predisposition were hotly contested. With respect to inducement, the record shows that many of the discussions concerning the hit man were initiated by McDaniel. In addition, when the defendant appeared to waiver in his resolve to have the meeting and commit the crime, McDaniel would warn the defendant that Waters was going to cause him trouble. McDaniel would suggest that Shuck had to do something to prevent Waters from "ruining your life." McDaniel indicated to the defendant that he needed to act quickly if he was going to do anything before he was ruined by Waters. Finally, McDaniel told the defendant that the hit man was behind in child support and had no money for Christmas and wanted to have the meeting as soon as possible. At trial, McDaniel admitted that she had tried to talk Shuck into meeting with the hit man; however, McDaniel said that she was concerned for the safety of the potential victims because the defendant had mentioned that he was talking to someone else in Cocke County who he was thinking about hiring to commit the murders.

On the issue of predisposition, the record does not reveal that the

defendant had a prior criminal record or a bad reputation. Indeed, he had been a practicing veterinarian in the area for thirty years, had served as city councilman, and been active in other civic and religious organizations. The defendant was not engaged in the criminal activity for profit and the proof was disputed as to whether McDaniel or the defendant first suggested hiring a hit man. The duration of the alleged inducement by McDaniel was lengthy, some five weeks, and her position as a trusted employee made the inducement more effective. Finally, during the course of the five week period, the defendant expressed reluctance and uncertainty about contacting a hit man even up to the day the actual meeting occurred. Considering the totality of the circumstances, including the recognition that without the considered opinion of an expert a jury may not be able to properly evaluate the effect of a defendant's cognitive and psychological characteristics on the existence of inducement and predisposition, we conclude that the trial court's exclusion of the expert testimony was not harmless error under Tenn. R. Crim. P. 52(a). Consequently, we affirm the Court of Criminal Appeals judgment reversing the convictions and remanding for a new trial.

## CONCLUSION

We conclude that the trial court abused its discretion by excluding expert testimony about the defendant's unique susceptibility to inducement on the sole basis that the expert testimony expressed an opinion on an ultimate issue to be decided by the trier of fact. Exclusion of the expert testimony was not harmless error. Consequently, we affirm the judgment of the Court of Criminal Appeals reversing the convictions and remanding for a new trial.

_____
FRANK F. DROWOTA, III,
JUSTICE

**CONCUR:**
Anderson, C.J.,
Reid, Birch, Holder, JJ.