IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2008

**STATE OF TENNESSEE v. NINO JONES**

**Appeal from the Circuit Court for Madison County**
**No. 07-39     Donald H. Allen, Judge**

---

**No. W2008-00348-CCA-R3-CD  - Filed November 24, 2008**

---

The Defendant, Nino Jones,[1] was convicted by a jury of one count of sale of cocaine, a Class C felony. In this direct appeal, he argues that the State failed to rebut his defense of entrapment beyond a reasonable doubt. We conclude that this argument lacks merit, and accordingly affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, Nino Jones, a/k/a Sandy Ray Scott.

Robert E. Cooper, Jr., Attorney General and Reporter; Mary W. Francois, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**
        The events underlying this case took place on July 8, 2006, in Jackson. Starting about 2:00 p.m. on that day, the Jackson Police Department's Metro Narcotics Unit implemented a drug buying operation targeting street level drug dealers. The operation involved a team of undercover, plain-clothes police officers in unmarked cars. Lieutenant Paul Thomas of the Milan Police Department, brought to Jackson for the operation because his identity was unknown by local dealers, drove alone in a car equipped with audio and video surveillance equipment. His role was to engage in drug transactions with targets. Jackson Police Department Investigators Chris Wiser and Wes Stillwell

---

[1]The Defendant stated under oath that his real name is Sandy Ray Scott. It is the policy of this Court, however, to refer to defendants using the name under which they were indicted.

led the operation, and both followed in another car equipped with devices to record the wireless surveillance signals emitted from Lt. Thomas' car. Other police were involved as well, primarily to assist with the "takedown" of a suspect after the completion of a buy.

The operation began when Lt. Thomas, dressed in blue jeans and a dirty white t-shirt, saw a woman, later identified as Tasha Cobb, standing outside a convenience store. Lieutenant Thomas testified that he pulled up next to her and asked her if she "knew anybody that was doing anything," a slang request for crack. Cobb asked Lt. Thomas what he was looking for. He replied, "a twenty."

Cobb told Lt. Thomas she would take him to a place where he could buy crack. She got into his car and sat down in the front passenger seat. Cobb then directed Lt. Thomas to three or four different locations. Upon arriving at each, she got out of the car, briefly talked to some people outside, and got back in the car, reporting that "they didn't have any." Cobb was successful the next time, however. She exited the car, returning a few minutes later with the Defendant, who sat in Lt. Thomas' rear passenger-side seat. Cobb, back in the front passenger seat, told Lt. Thomas that the Defendant was "going to take [them] to get it." Lieutenant Thomas handed the Defendant two twenty dollar bills; the Defendant began directing Lt. Thomas' driving. Also, using Lt. Thomas' cell phone, the Defendant called their destination to make sure the dealers had enough crack to sell.

Investigators Wiser and Stilwell, driving in their own car, meanwhile tried to stay close to Lt. Thomas. In order to properly receive the wireless signals from Lt. Thomas' car and make a good quality recording of the events therein, they testified that they had to stay relatively close to him. At one point they separated enough to lose the signal completely, and Investigator Wiser had to call Lt. Thomas on his cell for clues as to Lt. Thomas' position. Lt. Thomas could not explicitly direct Investigator Wiser without revealing his identity to Cobb and the Defendant, but he was able to bring him back within range by mentioning the nearby Lambuth College football field.

After a few minutes of driving, Lt. Thomas testified that he stopped and parked, at the Defendant's prompting, in a parking space in front of an apartment building. The Defendant exited the car and walked toward the building; Lt. Thomas assumed he went inside but did not see him do so. Cobb stayed in the car. After a few minutes, the Defendant returned to the car. He gave Lt. Thomas a small white rock substance wrapped in tissue paper. He did the same for Cobb, who complained that the Defendant had not given her more. Lt. Thomas drove away with Cobb and the Defendant still in his car. The Defendant told Lt. Thomas to let him know in the future if he ever needed anything else. The surveillance video, which the State played at trial, was of sufficient quality to largely corroborate these facts, and Lt. Thomas used it as an aid in his testimony.

After a few more minutes of driving, an unmarked police car activated its blue lights and pulled Lt. Thomas over. Cobb put her portion of the rock substance in her bra. An officer approached and instructed Lt. Thomas to turn off his car. He then directed Lt. Thomas out of the vehicle and ordered him to put hands on the side of the car. At this time Lt. Thomas saw that other members of the operation had arrived, including Investigators Wiser and Stillwell. In order to

conceal Lt. Thomas' status as a policeman, Investigator Stillwell searched him. He recovered the rock substance Lt. Thomas had received from the Defendant. Other officers removed Cobb and the Defendant from the car. Investigator Stillwell patted them down as well, recovering from the Defendant one ten dollar bill. Lt. Thomas told a female officer that Cobb had hidden some rock substance in her bra; that female officer retrieved it. Officers arrested both Cobb and the Defendant; Lt. Thomas and the rest of the operations team continued to execute undercover drug buys throughout that evening.

Investigator Wiser placed Lt. Thomas' rock substance in an evidence bag, noting his agency, the offense charged, the Defendant's name, and the date and time of retrieval. He later placed the bag in a secure evidence locker at the Jackson Police Department. Investigator Stillwell sent the evidence bag to the Tennessee Bureau of Investigation (TBI) for analysis. The TBI received it on September 5, 2006. Drug chemist Celeste White of the TBI Crime Lab analyzed the contents of the evidence bag on December 5, 2006. She confirmed, and testified at trial, that the bag contained .17 grams of cocaine base, a Schedule II controlled substance.

The Defendant testified in his own defense, explaining these events from his perspective. He said that he was walking to his father's house when Cobb, who he had known for five to ten years, approached him. The Defendant claimed that Cobb, not Lt. Thomas, gave him the money he used in the drug purchase. He said he bought twenty dollars worth of drugs from some men standing outside the destination apartment building, spending one ten dollar bill and ten one dollar bills. The Defendant did not deny that he had purchased the drugs or that he had handed them over to Cobb and Lt. Thomas, but he put forward as the heart of his defense that he did not do drugs, had never bought or sold drugs before, and would not have done so but for his desire to help Cobb, his friend.

The State impeached the Defendant's credibility by establishing his 2005 conviction for aggravated assault in Texas. The Defendant admitted on cross-examination that he had dialed his prospective drug source from memory when he used Lt. Thomas' cell. He said he could not remember whether he had told Lt. Thomas to come back to him in the future if he ever needed anything else. He also noted that he did not realize Lt. Thomas was a policeman until after he had been taken into custody.

The Defendant requested a jury instruction on the defense of entrapment. The trial court agreed to give the instruction.[2] The jury found the Defendant guilty of two counts of sale of cocaine. The trial court merged the two counts and sentenced the Defendant, as a Range I, standard offender, to six years in the Department of Correction, to be served consecutively to certain unrelated sentences the Defendant had previously received. He now appeals.

**Analysis**

---

[2] The trial court's jury instructions are not included in the record on appeal. The transcript of the trial reflects that the trial judge agreed to charge the jury with the defense of entrapment.

In this appeal, the Defendant "prays that this Court will recognize his defense of entrapment and dismiss his conviction." Tennessee Code Annotated establishes the defense of entrapment, stating that "[i]t is a defense to prosecution that law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so." Tenn. Code Ann. § 39-11-505. The Defendant argues that the State failed to offer evidence sufficient to rebut his entrapment defense.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

In this case, the trial judge decided to submit to the jury the issue of whether the defense of entrapment was shown. Therefore, the law required the trial court to instruct the jury that any reasonable doubt on this issue required the Defendant to be acquitted. See Tenn. Code Ann. § 39-11-203(d).

The supreme court has held that the entrapment defense as established in the Tennessee Code contemplates a subjective, rather than objective, inquiry. State v. Shuck, 953 S.W.2d 662, 666 (Tenn. 1997). This subjective test "requires the fact finder to focus on the subjective intent of the defendant to determine whether the defendant was predisposed to commit the criminal act, with law enforcement officials furnishing only the opportunity, or whether the defendant was an innocent person induced by police into committing the criminal offense." Id.

-4-

In this case, neither Cobb nor Lt. Thomas threatened or coerced the Defendant in any way. He willingly took money for the proposed sale. The Defendant knew where to find a crack dealer. He dialed that dealer's phone number from memory. He told Lt. Thomas of his availability to help buy drugs in the future. A rational jury could therefore find incredible the Defendant's testimony that he would never have bought or sold drugs but for Cobb's presence. The ease with which Cobb obtained his help, combined with the Defendant's testimony that he had known Cobb for "five to ten" years, might also be judged incongruous with the Defendant's testimony that he had never bought or sold drugs before.

The Defendant also argues that Cobb was, in effect, an agent of the government during the transaction at issue. The Defendant cites no authority for this argument. Even if Cobb were an agent of the government, however, the facts noted above would be sufficient for any rational jury to find, beyond a reasonable doubt, that the Defendant was predisposed to sell drugs. We therefore hold the trial evidence sufficient to overcome his entrapment defense beyond a reasonable doubt.

**Conclusion**

Based on the foregoing authorities and reasoning, we affirm the Defendant's conviction.

_____
DAVID H. WELLES, JUDGE