IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 6, 2007 Session

## STATE OF TENNESSEE v. ELBERT TATE

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 7830     Joseph H. Walker, III, Judge**

_____

**No. W2006-00997-CCA-R3-CD   -   Filed July 5, 2007**

_____

The defendant, Elbert Tate, was convicted of voluntary manslaughter (Class C felony) and sentenced as a multiple offender to ten years, consecutive to the sentence he was then serving. He appeals his conviction and asserts two issues: 1) the evidence was insufficient to support the conviction for voluntary manslaughter; and 2) the trial court erred in excluding corroborating evidence of the victim's propensity for violence. We conclude, after review, that the evidence sufficiently supported the conviction and that the exclusion of the offered testimony was error, but harmless. We affirm the conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Gary F. Antican, District Public Defender, and David S. Stockton and Julie K. Pillow, Assistant District Public Defenders, for the appellant, Elbert Tate.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Mike Dunavant, District Attorney General; and Tracey Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case concerns a killing on July 5, 2004, at the West Tennessee State Penitentiary. The defendant killed his "celly" or cellmate, Wilbert Rogers. The defendant was indicted by a Lauderdale County Grand Jury for second degree murder. At trial, the jury found the defendant guilty of the lesser included offense of voluntary manslaughter. The defendant now appeals his conviction.

Factual Background

The killing occurred during a period when the inmates were not confined to their cells but were free to visit others within their pod. Each cell had a button next to the door handle within the cell that, when pressed, opened the cell door during non-lockdown periods. Maurice Boyd was a prison guard within the defendant's pod on July 5, 2004. Boyd stated that the defendant came to the guard office and related that he believed his cellmate was dead. The defendant was holding a bloody towel to the back of his neck or head and had blood on his shirt. Boyd went to the cell and saw the victim lying on a blood-covered floor. Boyd stated that the victim was lying in an "L" shape by the cell commode. The defendant told Boyd that he was asleep on his bunk when the victim attacked and attempted to stab him.

Tonya Poole, a prison nurse, treated the defendant on the day of the killing. She described the defendant's injuries as a laceration on his neck and scratches on his face, forehead, right palm, and left arm. No injury required stitches, and treatment consisted only of applying antiseptic to the scratches and a bandage to the neck. Poole stated that the defendant had blood in his hair, but no puncture wounds were observed. She observed no stab wounds on the defendant.

Dr. Feng Li, a forensic pathologist and the Assistant Medical Examiner for Metropolitan Nashville and Davidson County, performed an autopsy on the victim. He stated the forty-seven-year-old victim was five feet, three inches in height and weighed 125 pounds. The victim suffered multiple stab wounds, including thirteen on the head and neck, one to the chest, four on the back, and one to the right forearm. Two of the stab wounds on the victim's back penetrated the chest cavity and injured the right lung. In addition, multiple fresh rib fractures were observed, as well as multiple abrasions. Dr. Li attributed the cause of death to multiple stab wounds.

David Donnell Palmer was an inmate housed in the same pod as the defendant and victim. Palmer testified that the defendant told him that the victim had been threatening the defendant because of the victim's belief that the defendant was involved with David Phillips, an inmate with whom the victim had a homosexual relationship. Palmer had, on one occasion, seen the defendant physically restrain the victim from hitting Phillips.

On July 5 at approximately 1:00 p.m., the defendant told Palmer that the victim had said he had a shank and was going to kill Phillips and had warned the defendant not to interfere. Later that day, at approximately 6:00 p.m., the defendant approached Palmer and told him that the victim had attacked him with a knife. The defendant said he had taken the knife and killed the victim. Palmer said the defendant was bloody and had some cuts. The defendant gave the knife to Palmer and told him to dispose of it. Palmer placed the knife in a garbage can, where it was later recovered after Palmer reported his account to investigators.

Joseph Vernon, Special Agent in Internal Affairs for the Department of Correction, was the lead investigator of this incident. He described the crime scene as extremely bloody. After the knife was recovered, Agent Vernon stated that the defendant identified it as the victim's knife. Agent

Vernon said that the knife was not very sharp and that the victim's back wounds were the exact shape of the knife blade.

The defendant gave Agent Vernon a signed statement concerning the incident. The defendant related that he was asleep on his cell bunk when the victim began stabbing him in the neck and head. The two men struggled, and the defendant received wounds to his right palm, left thumb and left shoulder. He stated he knew he stabbed the victim in the back, chest, and face, but did not recall how or when he stabbed him. Afterwards, he gave the knife to Palmer and then told Officer Boyd to call a paramedic, that the victim was dead.

Agent Vernon stated that the defendant was a foot taller, twenty-five pounds heavier, and ten years younger than the victim. There were no records of the defendant ever having requested a change of cellmate, despite the availability of such changes.

The defendant testified in his defense. He stated that he allowed the victim to share his cell because the victim constantly argued with his former cellmate, John Jones. On one occasion, the defendant observed Jones bleeding from the head. Jones told him that the victim had attacked him while Jones was sleeping.

The defendant said that the victim was an admitted homosexual and had a relationship with Phillips. The defendant conducted a Bible study ministry that Phillips sometimes attended. On one occasion, the defendant stopped the victim from hitting Phillips, and the victim struck the defendant. The victim also told the defendant and Palmer on July 5 that he was going to kill Phillips and anyone who interfered with him. The defendant recounted witnessing the victim make an unprovoked attack on another inmate, James Thomas.

In his testimony, the defendant admitted that he had given Agent Vernon an inaccurate account. He stated that the victim entered the cell first, followed by the defendant. The victim told the defendant to close the door and the privacy window. The victim then struck the defendant on the neck and began accusing him of being a "snitch" for reporting the victim's attack on Jones. The defendant said he feared for his life and that he had fallen and was "receiving slashes." The defendant identified the knife introduced into evidence by Agent Vernon as the weapon used by the victim in the attack. The defendant claimed that he did not remember how he got control of the knife or how the injuries were inflicted on the victim. The defendant admitted that he asked Palmer to dispose of the knife.

John Jones, an inmate, testified that he had formerly shared a cell with the victim. He said that, in May 2004, the victim struck him in the head with a coffee pot and then attempted to strangle him with an electric cord. Jones said that on July 5, 2004, the victim showed him a knife and told Jones that he was going to kill the defendant. Jones said he tried to change the victim's mind but did not report the threat. Jones also expressed his opinion that the victim was a violent person who boasted of killing two people in a Louisiana prison.

Another inmate, James Thomas, said that he had worked in the kitchen with the victim. Thomas claimed the victim became violent with him a "[c]ouple times." The State objected to more specific accounts by Thomas, and a jury-out hearing was held. Thomas described a confrontation with the victim on an unspecified date. He stated that the victim struck him in the chest but the defendant was present and removed the victim from the cell. Thomas explained that he feared the victim because the victim had bragged about killing people while they slept.

The trial court, without explanation, sustained the State's objection "with regard to the particulars" but allowed Thomas to testify concerning the victim's reputation. In the presence of the jury, Thomas said that the victim's reputation was as a "punk lover and a killer."

Based on this evidence, the jury returned a verdict of guilty of voluntary manslaughter.

Sufficiency Analysis

The defendant contends that the evidence does not support the conviction because the State did not disprove the defendant's claim that he acted in self-defense. Our standard of review on a sufficiency challenge is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We must afford the prosecution the strongest legitimate view of the evidence, as well as all reasonable and legitimate inferences which may be drawn therefrom. See State v. Bland, 958 S.W. 2d 651, 659 (Tenn. 1997). The trier of fact resolves all questions concerning the credibility of witnesses, the weight and value of the evidence, as well as all factual issues, and this court does not reweigh or re-evaluate the evidence. State v. Cole, 155 S.W.3d 885, 897 (Tenn. 2005).

"Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211(a) (2006). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b) (2006). It is within the province of the jury to determine whether "adequate provocation" existed. See State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995).

The doctrine of self-defense is codified and reads in pertinent part as follows:

A person is justified in threatening or using force against another person when, and to the degree, the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

T.C.A. § 39-11-611(a) (2006). The defendant's claim of justification through self-defense is also a fact question for the jury. See State v. Clifton, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994). In making its determination whether the defendant acted in self-defense, a jury must consider whether the defendant's belief in imminent danger was reasonable, whether the force used was reasonable, and whether the defendant was without fault. State v. Renner, 912 S.W.2d 701, 704 (Tenn. 1995).

The jury's verdict reflects that the defendant's claim of self-defense was rejected. We conclude that there was abundant evidence to support the verdict of voluntary manslaughter. The defendant admitted killing the victim, though he claimed no recall of obtaining the weapon and inflicting the wounds. The defendant was a foot taller, at least twenty-five pounds heavier, and ten years younger than the victim. Autopsy findings showed that the victim sustained nineteen separate stab wounds, thirteen to the neck and head and two that penetrated the chest cavity. The defendant, in turn, received only superficial wounds and none that required sutures. The dullness of the weapon, considered with the extent of the victim's wounds, indicated that the defendant's attack was forceful and sustained. The jury accepted the defendant's claim of provocation but rejected his claim of self-defense. As indicated above, both are areas completely within a jury's prerogative.

Exclusion of Evidence

Next, the defendant asserts error in the trial court's exclusion of corroborative evidence offered by the defense witness, Thomas, concerning the victim's propensity for violence.

In Tennessee, rulings on the admissibility of evidence are largely within the sound discretion of the trial court and will not be disturbed on review unless there appears to be an abuse of discretion. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). "'[A]n appellate court should find an abuse of discretion when it appears that the trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" State v. Stevens, 78 S.W.3d 817, 832 (Tenn. 2002) (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

The evidence, which was excluded, were the particulars of a physical encounter between inmate Thomas and the victim in the presence of the defendant. The defendant had previously testified that he had witnessed the incident; therefore, the offered evidence was corroborative. The trial court did not state its reason for excluding Thomas's testimony of the details of the encounter with the victim.

This court in State v. Ruane, 912 S.W.2d 766, 780 (Tenn. Crim. App. 1995), held that when self-defense is raised, the defendant could present proof of the victim having previously assaulted a third person. In Ruane, the specific act had occurred six years prior to the crime at issue but was ruled competent evidence to corroborate the defendant's claim that the victim was the first aggressor.

We conclude that the exclusion of this corroborative evidence was an abuse of discretion. Having concluded it was error, we must determine if it was reversible error. It is established law that "nonconstitutional errors will <u>not</u> result in reversal unless the error affirmatively appears to have affected the trial on the merits. . . ." State v. Harris, 989 S.W.2d 307, 315 (Tenn. 1999) (citing Tenn. R. Crim. P. 52(1)) (emphasis in original).

It was established by uncontroverted evidence through both State and defense witnesses that the victim was a violent person and that he had acted as first aggressor on specific occasions. The disallowed testimony by Thomas paled in comparison to other acts of violence by the victim. The victim's reputation had been thoroughly disparaged. The excluded evidence was corroborative only as the defendant had testified concerning the same incident. In light of these factors, we conclude that the error was harmless and did not affect the verdict of the jury.

Conclusion

From our review, we conclude that the evidence supported the conviction for voluntary manslaughter. The exclusion of the corroborative testimony was error but harmless in light of the overwhelming evidence proving the violent nature of the victim. The judgment of conviction is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE