IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2023 Session

**STATE OF TENNESSEE v. CHANDLER GANT**

**Appeal from the Circuit Court for Robertson County**
**No. 74CC2-2021-CR-443  William R. Goodman, III, Judge**

———————————————————

**No. M2023-00214-CCA-R3-CD**

———————————————————

The Defendant, Chandler Gant, pled guilty in the Robertson County Circuit Court to assault, a Class A misdemeanor, and was sentenced by the trial court to 11 months, 29 days in the county jail, with 30 days to serve on consecutive weekends and the remainder of the time on supervised probation.  On appeal, the Defendant argues that the trial court abused its discretion by ordering a sentence of partial confinement.  Based on our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and KYLE A. HIXSON, JJ., joined.

Rob McKinney, Nashville, Tennessee, for the appellant, Chandler Blake Gant.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Robert Nash, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On May 30, 2021, the intoxicated twenty-four-year-old Defendant, who was a customer at the Sonic Restaurant where seventeen-year-old victim Brian Alexander Morales worked as a cook, became involved in a verbal confrontation with other Sonic employees.  As the victim was exiting the restaurant, the Defendant, without warning, struck him in the face with his closed fist, breaking the victim's orbital bone, chipping one of his teeth, and causing lacerations to his face.  On August 15, 2021, the Robertson County

Grand Jury returned a presentment charging the Defendant with aggravated assault, a Class C felony. On October 10, 2022, the Defendant pled guilty to assault, a Class A misdemeanor, with the sentencing left to the trial court's later determination.

At the February 10, 2023 sentencing hearing, the State introduced the presentence report, which reflected that the Defendant had only one other prior conviction, a DUI in 2018 committed when he was twenty-one. The presentence report further reflected that the Defendant was a high school graduate, had graduated from a vocational course with a lineman certification, and was currently studying for his contractor's license. The Defendant had been steadily employed since high school and in 2021 had started a company, Tennessee Erosion Control, which he owned and operated with a business partner and twenty-one employees.

The victim testified that on the evening of May 30, 2021, the Defendant came to the Sonic restaurant with "a lot of energy." He said that the Defendant and his companions were making a lot of noise, and the Defendant had to be asked more than once to turn his music down. The victim clarified that he was working as a cook in the kitchen and did not initially see or interact with the Defendant. He stated that his fellow employees were talking about the situation, and that he walked to the front of the restaurant to see what was happening. When he looked out the window, he saw the Defendant "acting out in some way." He could not recall exactly what the Defendant was doing but said that he was not acting violently but "more playfully."

The victim testified that he smiled when he saw the Defendant. The Defendant then walked up and knocked on the window "a couple of times . . . asking for one [of the employees] to come out." The victim said he did not know if the Defendant was asking for any particular employee, but that no one in the restaurant responded. The victim stated that as he was later exiting the restaurant, the Defendant suddenly struck him in the face with his fist. No words were exchanged, and the victim still had both hands on the door when the Defendant hit him. The victim testified that he took a couple of steps back after the Defendant hit him. The Defendant was shouting at him and taunting him during that time. The victim stated that several of his fellow employees ran out to assist, and that they took him inside the restaurant to help clean the blood from his face.

The victim described his injuries as a swollen eye, a fractured orbital, a chipped tooth, and a bitten tongue. He stated that he had his tooth repaired by a dentist but did not require any surgery. His injuries were quite painful, and it was difficult for him to sleep due to the amount of swelling in his face and a burst blood vessel in his eye, which was "very, very irritating." The victim testified that it took approximately a month for his injuries to heal. He said that he had never met the Defendant or interacted with him prior to the time of the assault.

On cross-examination, the victim testified that he could not remember if his mother had filed a civil lawsuit against the Defendant seeking three million dollars in damages. At the request of defense counsel, the trial court admitted a copy of the civil complaint as an exhibit to the hearing.

The victim's mother, Lindsay Davis, testified that the victim was transported by ambulance from the restaurant to the emergency room, where he spent approximately four hours. She said the victim suffered a fractured orbital zone, a broken tooth, a "busted" nose and eyebrow, and a "shifted" jaw. She testified that the victim was high-functioning autistic and did not like to be touched, which made his medical treatment an ordeal. She said the victim experienced "sensory overload" and was both emotionally and physically spent by the time they got home from the hospital. The victim was unable to sleep that first night due to the pressure in his face when he attempted to recline, and for the next nine or ten months, the victim had to sleep upright in a chair instead of in his bed.

Ms. Davis testified that the victim had his tooth repaired by a dentist, with a follow-up visit required to replace fillings that had not stayed in place. She said the victim continued to experience periodic discomfort in his jaw, possibly from grinding his teeth, which was something he had not done before. She stated that the victim had difficulty expressing his feelings about the assault and that she had taken him to see a counselor to help him work through what had happened to him. The victim had worked "very, very hard to be normal," and the assault destroyed his sense of security and caused him a setback. The victim was well-liked by his peers, highly intelligent, and currently in college earning straight As. However, it had not been an easy task for the victim to overcome the trauma of the assault. Finally, Ms. Davis expressed her outrage at the Defendant's behavior.

Defense counsel introduced character letters submitted on the Defendant's behalf by a number of individuals and asked the court to recognize that the Defendant's father, grandmother, brother, and business partner were present at the hearing in his support. Defense counsel also introduced as exhibits the Defendant's certificates of completion of an anger management course and of a drug and alcohol assessment. In a brief allocution, the Defendant said that he was "sorry and . . . regretful for [his] actions and the damages that [he] ha[d] caused to [the victim] and his family."

Defense counsel argued for a sentence of straight probation, while the State argued that the offense deserved a sentence involving some period of confinement. At the conclusion of the hearing, the trial court sentenced the Defendant to 11 months, 29 days with thirty days confinement in the county jail. In recognition of the Defendant's employment, the trial court ordered that the thirty days of confinement be served on consecutive weekends.

On February 13, 2023, the Defendant filed a timely notice of appeal to this court.

## ANALYSIS

On appeal, the Defendant contends that the trial court abused its discretion by failing "to consider the correct legal standard on whether to consider confinement." The Defendant asserts that the trial court failed to properly assess the factors in Tennessee Code Annotated section 40-35-103, failed to consider the presentence report or the evidence presented at the sentencing hearing, failed to articulate its reason for ordering 30 days confinement, and based its order of confinement "on an erroneous assessment of the evidence[.]" The State responds that "the trial court acted well within its considerable discretion and did not arbitrarily impose a sentence of partial confinement." We agree with the State.

A sentence imposed for a misdemeanor offense must be specific and in accordance with the principles, purposes, and goals of the Sentencing Act. Tenn. Code Ann. §§ 40-35-104, -302(b); *State v. Cooper*, 336 S.W.3d 522, 524 (Tenn. 2011); *State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995). In determining a defendant's sentence, the trial court is to consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the Defendant in his own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. § 40-35-210(b).

Sentences involving confinement should be based on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

- 4 -

*Id.* at § 40-35-103(1). In addition, "[t]he sentence imposed should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" *Id.* at § 40-35-103(2), (4). A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citation omitted). The defendant bears the burden of proving that the sentence is improper. Tenn. Code Ann. § 40-35-101, Sentencing Comm'n Cmts.

The Defendant asserts that the trial court failed to consider the relevant evidence and the applicable law in imposing the sentence of periodic confinement, essentially arguing that the trial court's decision was arbitrary. We disagree. The record reflects that the trial court considered, but rejected, the factors the Defendant cited in favor of a sentence of straight probation, concluding that the sentence of periodic confinement was necessary to avoid depreciating the seriousness of the offense and was no greater than deserved based on the offense committed. The trial court's ruling states in pertinent part:

> [The victim] will be forever affected by this. I recognize this . . .
>
> The Court does have the responsibility though of addressing circumstances that enables our society to function. There is no justification that has been presented, no testimony of any justification for a . . . twenty-five[-]year old [sic] man punching a seventeen[-] year[-] old cook at a Sonic in the face! There is no justification for that and that is conduct that society simply cannot tolerate.
>
> The Defendant cited TCA 40-35-103 and it is about sentencing considerations and sentences involving confinement should be based on the following, and he set forth those. But sub-section (2), the sentence imposed should be no greater than that deserved for the offense committed. I think that's kind of where we come on this.
>
> I am going to commend [the Defendant], he's apparently--he is not lazy, he works. His family is here to support him and the Court can't address compensation. That will be sorted out in the civil case.
>
> The Defendant has entered a plea to the misdemeanor offense of assault, a sentence of eleven months and twenty-nine days. I am going to sentence [the Defendant] to a term of thirty days. I understand he makes a living. He can serve those on the weekends.

The record reflects that the trial court appropriately considered the evidence and the principles and purposes of sentencing in imposing the sentence of periodic confinement. Accordingly, we affirm the sentence imposed by the trial court.

## **CONCLUSION**

Based on our review, we affirm the judgment of the trial court.

_____
JOHN W. CAMPBELL, SR., JUDGE