# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 23, 2010 Session

## STATE OF TENNESSEE v. TIMOTHY LEBRON ARNOLD

**Appeal from the Criminal Court for Hamilton County**
**No. 270967    Don W. Poole, Judge**

**No. E2010-00419-CCA-R3-CD - Filed April 6, 2011**

The Defendant, Timothy Lebron Arnold, was indicted for especially aggravated robbery, a Class A felony, but pled guilty to robbery, a Class C felony, and received a sentence of five years in the Tennessee Department of Correction. In this appeal as of right, the Defendant contends that the trial court erred in permitting testimony from an officer at the sentencing hearing; that the trial court erred in setting the length of his sentence; and that the trial court erred in denying alternative sentencing. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Robin Ruben Flores, Chattanooga, Tennessee, for the appellant, Timothy Lebron Arnold.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William H. Cox, III, District Attorney General; and Cameron B. Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the guilty plea submission hearing, the Defendant admitted that on November 23, 2008, he beat the victim, Quintez Stoudermire, with a handgun and stole the victim's wallet and cellular telephone.

At the sentencing hearing, the victim testified that he was a student at Chattanooga State and that he saw the Defendant at the recreation center on November 23, 2008. The victim testified that he knew the Defendant "[f]rom the neighborhood." The Defendant confronted the victim, asking him where he was from and why he was looking at the Defendant. The victim responded, and the Defendant "pulled out a gun" and "cocked it."[1] At that time, the victim received a call on his cellular telephone and subsequently "walked off," ignoring the Defendant. The Defendant "walked up behind" the victim and spoke with the victim again. The two engaged in conversation, and the Defendant hit the victim in the head with the handgun. When the Defendant hit the victim a second time, the handgun discharged. At some point, the Defendant also fired the weapon at the ground near the victim. When the victim was on the ground, the Defendant instructed "two other guys" to check the victim's pockets. The men took the victim's wallet, cash, and cellular telephone that had fallen on the ground. The victim stated that he also had a cut on his nose, but he could not remember how he received that injury.

After the Defendant and the two other men left, the victim began to walk home. A man observed the victim, saw that he was bleeding, and offered him a ride home. Once the victim arrived home, he was taken to the hospital. Karla Culbreath, the victim's mother, testified that when the victim arrived home, he was bleeding. She stated that his head, face, and shirt were bloody. As a result of his injuries, the victim had four staples placed on the top and back of his head. The victim also suffered from short-term memory loss. On cross-examination, the victim admitted that he had smoked marijuana in the past.

Officer Charles Bowman of the Hamilton County Sheriff's Department testified that he came into contact with the Defendant on January 2, 2010, while the Defendant was incarcerated. On that day, Officer Bowman allowed the Defendant to leave his cell for recreation time. While the Defendant's telephone privileges were suspended, the telephone was still operational in the recreation room. When the Defendant approached the telephone, Officer Bowman instructed the Defendant that he was not allowed to use the telephone. When another officer observed the interaction and turned the telephone off, the Defendant "began slamming the phone on the hook." Officer Bowman told the Defendant that his recreation time was over, and the Defendant "started to step toward [him]." In response, Officer Bowman removed his mace and told the Defendant several times that he was on "lock down." The Defendant went into his cell without any further problems.

At that time, the inmates' laundry was being delivered to the third floor. In an effort to avoid any further problems with the Defendant, Officer Bowman took the Defendant's laundry to the Defendant's cell. Upon arriving at the Defendant's cell door, he observed that

---

[1]The victim testified that the handgun was likely a .380 semiautomatic.

the Defendant had a clear cup filled with a yellow substance. Officer Bowman was standing approximately four feet from the cell door when the Defendant threw the substance at his face. Officer Bowman testified that he believed that the substance was urine, given the smell and taste of the substance. Approximately one week later, the Defendant told Officer Bowman that he "smelled like urine."

The Defendant testified at the sentencing hearing that he observed the victim walking down the street while smoking marijuana. He followed the victim, who walked behind the recreation center. The Defendant approached the victim and spoke with him. When the victim asked the Defendant how much a "quarter" of marijuana would cost, the Defendant told him that he would have to pay $50. The victim handed the Defendant the money, and the two fought, presumably because the Defendant did not give the victim the marijuana.

On cross-examination, the Defendant denied using a handgun while fighting with the victim but admitted that he had pled guilty to weapons offenses in the past. The Defendant admitted that he possessed a .22 revolver and a .38 special at one time. When asked by the trial court about the incident with Officer Bowman, the Defendant told the court that he threw water, not urine, on Officer Bowman. He stated that he did not think that it was "right to throw . . . urine on somebody."

Following the hearing, the trial court found the victim to be a credible witness but did not find the Defendant to be a credible witness. The trial court denied alternative sentencing and sentenced the Defendant to five years as a Range I offender.

## ANALYSIS

### I. Testimony

The Defendant contends that the trial court improperly considered Officer Bowman's testimony because the testimony concerned an event that happened after the instant offense. The Defendant further contends that the Defendant's case should be remanded because the trial court did not specifically find that the probative value of the testimony outweighed its prejudicial effect; therefore, this court cannot properly review the trial court's ruling. The State responds that the trial court properly admitted Officer Bowman's testimony because the testimony was relevant to the Defendant's potential for rehabilitation, the likelihood that he may reoffend, and his recent history of criminal behavior and convictions.

Before Officer Bowman testified, defense counsel objected to the entirety of the witness's testimony on relevance grounds. The trial court withheld ruling on the matter until the entirety of the testimony had been heard. After Officer Bowman testified, defense

counsel renewed his objection. The trial court overruled the objection, found that the testimony was relevant, and stated that while the evidence was prejudicial, the probative value outweighed any prejudice. Thus, we reject the Defendant's assertion that the trial court failed to rule upon this matter.

We acknowledge that the rules of evidence apply to sentencing hearings. Tenn. Code Ann. § 40-35-209(b). When issues of evidence relevancy are presented, "[a]dmission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion." State v. Robinson, 146 S.W.3d 469, 490 (Tenn. 2004) (citing State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997)). The trial court's exercise of its discretion may not be reversed on appeal unless the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997).

The testimony complained of was relevant to the Defendant's potential for rehabilitation or treatment and his criminal history or behavior in addition to that necessary to establish the appropriate range. Accordingly, we conclude that the trial court did not err in allowing Officer Bowman to testify concerning the Defendant's post-offense conduct.

## II. Length of sentence

The Defendant contends that the trial court improperly considered enhancement factor number nine, employment of a firearm, because the elements of the indicted offense, especially aggravated robbery, involved the use of a deadly weapon; thus, the trial court's application of enhancement factor nine violated the principles of double jeopardy when he pled guilty to the lesser-included offense of robbery. The Defendant further contends that the trial court erroneously rejected his proposed mitigating factor – the victim's "unclean hands." The State responds that the principles of double jeopardy were not implicated by the imposition of enhancement factor number nine and that the use or employment of a weapon was not an element of robbery. The State further responds that the trial court properly rejected the proposed mitigating factor after concluding that the Defendant's testimony was not credible.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2005). The appealing party has the burden of showing that the imposed sentence is improper. Id. If review of the record reflects that the trial court properly considered all relevant factors, gave due consideration to each factor, and its findings of fact are adequately supported by the record, this court must affirm the sentence. State v. Fletcher, 805 S.W.2d 785, 789

-4-

(Tenn. Crim. App. 1991). Should the record fail to demonstrate the required considerations by the trial court, then appellate review of the sentence is purely de novo. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review, the trial court must "place on the record, either orally or in writing, what enhancement and mitigating factors were considered, if any, as well as the reasons for the sentence." Tenn. Code Ann. § 40-35-210(e).

The Defendant committed this offense on November 23, 2008; thus, he was sentenced under the revised sentencing act as enacted by the Tennessee General Assembly in 2005. The act provides that:

> (c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> > (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
> >
> > (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c)(1)-(2) (2006).

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210(d)-(f); State v. Carter, 254 S.W.3d 335, 342-43 (Tenn. 2008). "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in . . . the Sentencing Act." Carter, 254 S.W.3d at 346. Accordingly, on appeal we may only review whether the enhancement and mitigating factors were supported by the record and their application was not otherwise barred by statute. See id.

In conducting its de novo review with a presumption of correctness, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the potential for rehabilitation or treatment, and (8) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

At the sentencing hearing, defense counsel argued that the doctrine of "unclean hands" should be applied as a mitigating factor. Defense counsel asserted that the victim had been less than truthful and that the altercation between the victim and the Defendant was likely a dispute over drugs. The trial court considered but rejected this proposed mitigating factor from defense counsel.

The trial court applied four enhancement factors and sentenced the Defendant to five years, two years above the minimum. See Tenn. Code Ann. § 40-35-112(a)(3). The trial court considered the Defendant's criminal history, which consisted of four misdemeanor convictions,[2] before ultimately concluding that application of enhancement factor number one was warranted. Tenn. Code Ann. § 40-35-114(1) ("The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range."). The trial court acknowledged that all of the prior convictions were misdemeanors but found that given the Defendant's youth, his criminal history was substantial. The trial court stated that given the fact that the Defendant instructed two other people to rob the victim, application of enhancement factor number two was warranted. Tenn. Code Ann. § 40-35-114(2) ("The defendant was a leader in the commission of an offense involving two (2) or more criminal actors."). The trial court further concluded that because employment of a firearm was not an element of robbery, the facts of the case warranted the application of enhancement factor number nine. Tenn. Code Ann. § 40-35-114(9) ("The defendant possessed or employed a firearm . . . during the commission of the offense."). Noting that the Defendant was on probation at the time of the instant offense, the trial court applied enhancement factor number thirteen. Tenn. Code Ann. § 40-35-114(13)(C) ("At the time the felony was committed, [the Defendant] was released on probation.").

---

[2]The Defendant had two weapons offense convictions, one criminal impersonation conviction, and one resisting arrest conviction.

While the Defendant is correct in his assertion that employment of a firearm is an essential element of aggravated robbery, the Defendant was convicted of robbery, not aggravated robbery. Because the Defendant pled guilty to an offense that was not charged in the indictment, we must look to the statutory elements of the conviction offense without the aid of the indictment. Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). The employment of a deadly weapon is not an essential element of robbery. See id. Accordingly, we conclude that the trial court did not err in applying this factor when sentencing the Defendant.

As to the Defendant's contention that the trial court should have applied the proposed mitigating factor of the victim's "unclean hands," the trial court considered this factor under the catch-all provision before concluding that it did not apply. As previously explained, as long as the record reflects that the trial court properly considered the proposed mitigating and enhancement factors, this court is bound by the weight afforded any factors applicable to the offense and not otherwise barred by statute. Following our review, we conclude that the record supports the trial court's decision as to the length of the sentence.

III. Denial of alternative sentencing

The Defendant contends that the trial court's denial of alternative sentencing was improper because it imposed confinement based solely on the circumstances of the offense. The Defendant asserts that reliance upon this factor required a finding that the "circumstances of the offense as committed [were] especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense . . . outweigh[ed] all factors favoring probation" pursuant to State v. Bottoms, 87 S.W.3d 95, 103 (Tenn. Crim. App. 2001). The State responds that the trial court properly denied alternative sentencing and that the trial court did not rely on only one factor in denying alternative sentencing. The State further responds that the record supports the trial court's denial of alternative sentencing when the Defendant attacked the unarmed victim and repeatedly beat him over the head with a loaded handgun, discharging the weapon; the Defendant had a long history of criminal conduct as evidenced by the presentence report; and the Defendant was on probation when he committed the instant offense.

The Defendant was convicted of a Class C felony. Therefore, he was to be "considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2006). However, this consideration does not automatically entitle a defendant to alternative sentencing; rather, sentencing issues must be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing Moss, 727 S.W.2d

at 235). The defendant must establish his suitability for alternative sentencing. Tenn. Code Ann. § 40-35-303(b).

In determining a defendant's suitability for alternative sentencing, the trial court should consider whether

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). The trial court shall also consider the mitigating and enhancing factors as set forth in Tennessee Code Annotated sections 40-35-113 and -114. Tenn. Code Ann. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code. Ann. § 40-35-103(5); Boston, 938 S.W.2d 435 at 438. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

In denying alternative sentencing, the trial court found that confinement was necessary to protect society by restraining the Defendant, who had a long history of criminal conduct. The trial court further found that confinement was necessary to avoid depreciating the seriousness of the offense when the Defendant was originally indicted for aggravated robbery but pled guilty to robbery. In so finding, the trial court stated that it believed that the facts would have supported an aggravated robbery conviction. The trial court also found that measures less restrictive than confinement had already been applied to the Defendant.

We reject defense counsel's assertion that the trial court relied on only one factor when denying alternative sentencing in the Defendant's case. Following our review, we conclude that the trial court gave appropriate consideration to the sentencing factors when arriving at its determination and that the record supports the trial court's denial of alternative sentencing in this case.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE