IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 27, 2012

**STATE OF TENNESSEE v. TRAVIS NIPPER**

**Appeal from the Circuit Court for McMinn County**
**No. 10CR502    Amy A. Reedy, Judge**

**No. E2011-02577-CCA-R3-CD - Filed June 3, 2013**

The appellant, Travis Nipper, was indicted for the Class D felony of Theft of $1,000 or more by the McMinn County Grand Jury. After a trial by jury, he was convicted of the Class E felony of Theft over $500 and was sentenced to one year in the Department of Correction. The appellant appeals his conviction and sentence, stating that his due process rights were violated when the trial court excluded defense evidence during trial that allegedly had been ruled admissible in a pretrial hearing, and that he had been improperly denied an alternative sentence to incarceration. We affirm the appellant's conviction and sentence.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

CHRISTOPHER CRAFT, SP. J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Matthew C. Rogers, Athens, Tennessee, for the appellant, Travis Nipper

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Steven Bebb, District Attorney General; and James Stutts, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises out of the appellant's arrest for driving a stolen truck. The true owner of the truck and the arresting officer were the only two witnesses to testify at trial.

**State's Proof**

Janet Woods testified that she owned a blue 1993 Ford Ranger pickup truck that was stolen from a parking lot in Athens, Tennessee, on May 12, 2010. On July 21st, a little over two months later, her stepson saw the truck traveling down Highway 30 towards Etowah, Tennessee, and called 911. She was given notice later that day to come

retrieve her truck at the McDonalds restaurant in Etowah, and after arriving, found the truck in bad condition. The steering column had been broken, the bed liner was missing and the grill and other parts of the truck had been damaged. She stated that she had originally paid $2,100 for the truck and had spent another $1,500 on it before it was stolen. She did not know the appellant and had not given him permission to drive her truck.

Officer Ben Fetter of the Etowah City Police Department next testified that the 911 call was transferred from McMinn County Dispatch to Etowah City Dispatch, and when he received the call he was sent to Highway 30 and observed the truck described to him, still being followed by the stepson who had made the 911 call. He pulled the truck over at the McDonalds restaurant in Etowah. The driver of the truck produced a driver's license identifying himself as the appellant, and he was identified in court. Officer Fetter testified that the appellant appeared to be nervous when producing his identification and would not look the officer directly in the eye. His hands were shaking and he "was a little hesitant" when answering the officer's questions. The registration the appellant handed the officer was dated that same day, the day of the stop, and matched the license tag on the truck, but belonged to a black 1991 Ford Ranger with a different VIN number. The VIN number on the 1993 blue Ford Ranger the appellant was driving showed to be stolen. He therefore arrested the appellant and called the Athens Police Department, where the truck had been originally reported stolen, and they in turn called Ms. Woods to recover her truck at the McDonalds restaurant.

Officer Fetter testified that he asked the appellant where he had bought the vehicle, but he was unable to tell him. He asked the appellant from whom he had bought the vehicle, and he stated that "he had found the vehicle for sale in a field in somewhere in the Athens/Niota area."

**Defense Proof**

The appellant recalled Officer Fetter as his only witness, introducing as an exhibit the title to the truck that the appellant had given him during the stop. Although the VIN number on the title was to a different truck, the previous registered owner listed on the title was a David Roberts. The defense attorney then asked the witness the following questions:

Q: And being the investigative officer did you go talk to David Roberts or anything like that?
A: No, I did not.
Q: And let me hand you another document and ask you would it surprise you to know that Mr. David Randy Roberts was indicted for automobile –
[PROSECUTOR]: Objection, your Honor. Relevance?
THE COURT: Sustained.
[DEFENSE COUNSEL]: (Indiscernible)

[PROSECUTOR]: So what's the relevance. You can't impeach a witness you haven't called.

THE COURT: A prior conviction is relevant to certain things, credibility, but that person hasn't testified. I sustain the objection.

[DEFENSE COUNSEL]: It's my understanding (indiscernible)

THE COURT: You have got it out there. It's sustained.

On cross-examination by the State, Officer Fetter testified that the title in question belonged to a 1991 Ford Ranger which had been transferred to the appellant on October 1, 2009, seven months before the truck for which he was on trial had been stolen. When asked on re-direct why he did not find it necessary to "go look into" the person from whom the appellant claimed to have gotten the truck, the officer stated that "since the registration and title in the vehicle showed that he had purchased the vehicle months before the stolen vehicle that he was in I didn't see that it was necessary." The defense rested without putting on any further proof, but renewed its motion, outside the presence of the jury, to be allowed to introduce the certified documents it had attempted to introduce during the testimony of the officer. The State again objected on several grounds: that there was no showing that the David Roberts on the title was the same David Randy Roberts on the indictment, judgment and sentencing documents; that the theft alleged in the indictment was of a Chevrolet Silverado, a completely different vehicle; that the documents showed that David Roberts had been in custody since March 10, 2010, prior to the date Ms. Woods' truck was stolen; and that the documents were not relevant to the appellant's guilt or innocence. The trial judge then stated as follows:

I'm going to continue to sustain the objection of the State to your attempt to cross-examine Deputy Fetter with extrinsic evidence of somebody else's prior record for something we are not on trial about. It's not relevant to his credibility. If it was relevant it might be in a trial with Mr. Roberts ... .

The jury ultimately convicted the appellant of the lesser offense of Theft over $500, apparently not finding beyond a reasonable doubt that the truck was worth $1,000 or more when the appellant exercised control over it. The trial court, after a sentencing hearing, sentenced the appellant to one year in the Department of Correction. He now appeals his conviction and sentence, stating that his due process rights were violated when the trial court excluded the indictment and conviction of David Randy Roberts for car theft that he alleges had been ruled admissible in a pretrial hearing, and that he was improperly denied an alternative sentence to incarceration.

### Due Process Issue

The appellant alleges that the trial judge, at a pretrial hearing, ruled that the court documents showing the theft conviction of David Randy Roberts would be admissible at

trial, and that when she changed her ruling during the defense proof, this violated the appellant's due process right to a fair trial, as he was relying on the pretrial ruling as a substantive part of his defense. A careful reading of the proceedings of the pretrial hearing reveals no such definitive ruling. The appellant's trial had initially been set to begin on April 5, 2011, two months before the actual trial date, and a pretrial conference was held the day before, proceeding as follows (emphasis supplied):

> [DEFENSE COUNSEL]: .... One issue that I intend on bringing up tomorrow is, it's a theft of an automobile case, and it's the criminal history of the person that was on the certificate of title that sold it to my client and I have copies of convictions for that person, but it's not about this vehicle, and the General objects I believe to me introducing the certified conviction of Mr. David Roberts in this particular case because it was not the same vehicle. In essence, your Honor, I would like to show to the jury that the person that my client said he bought the vehicle from, who is listed on the title and signed the title is a car thief and that he has stolen cars before. So that would be our defense. There's no hidden issues here. We just bought a car from a thief and got caught driving it and we didn't know. And the General I think has an objection to this.
>
> [PROSECUTOR]: I do. Your Honor, it's not exactly an alibi but I guess it's about as close as you can get, to try to blame it on somebody that's not here. This is a person in federal custody. If your Honor in (sic) inclined to let them make that argument I would like to move for a continuance. I can get him here as a witness under a writ and we will find out whether this person stole it or not, or knew anything about it when he sold it to this guy, according to their proof. I guess if we are going to go down this road I would move to continue to give me an opportunity to get him back here.
>
> THE COURT: *So he's not going to testify?*
>
> DEFENSE COUNSEL]: *No. I just have a certified copy of a conviction for Mr. David Roberts from this Court.*
>
> [PROSECUTOR]: But it is not the vehicle at issue in this trial.
>
> [DEFENSE COUNSEL]: It's a different vehicle. It was a vehicle that he plead to in March of 2010, and this vehicle was found in July of 2010.
>
> THE COURT: But for purposes of your defense *you say this vehicle was sold to me by this guy –*
>
> [DEFENSE COUNSEL]: Right.
>
> THE COURT: This car thief.
>
> [DEFENSE COUNSEL]: Right, who plead to car theft just three months before he sold it to us.
>
> THE COURT: And you object to--*how would you, what basis of entry into evidence, what sort of foundation could you lay to do something like that? I could*

-4-

*see if the fellow testifies, and certainly I think you could use it to impeach him.*

[DEFENSE COUNSEL]: I think I can get it in under the exception to the hearsay requirement because it's an authenticated document from the Court, *and if my client chooses to take the stand I can say "After you found yourself in this predicament of going to jail for buying this vehicle that you registered that was sold to you by this Mr. Roberts guy did you and I go do some research on him and find out something," and I think he can go "Yeah, we found our here are some certified convictions that he's a car thief. I wish I had known that before I bought the car."*

THE COURT: So you think you can get it in under a business records exception?

[DEFENSE COUNSEL]: Yes.

THE COURT: With the clerk?

[DEFENSE COUNSEL]: With the clerk, or if I have to I guess I could call one of the deputy clerks or I guess Ms. Cooley could testify as to the authenticity of the record.

THE COURT: And you don't object to it, you just want to move to continue to get that person here?

[PROSECUTOR]: Well, I do object. I think it's irrelevant. You know if this isn't something Mr. Nipper knew at the time I don't see that it's relevant to his conduct at the time in July of last year he's found in possession of a stolen vehicle.

THE COURT: *Well, I think it's relevant, and how relevant it is is probably a jury question, and I guess what I'm inclined to do is to grant the state's motion to continue to see if they can get or secure the presence of the person,* the body, but I can see how that's his defense, "that I bought this car from this guy *and if this guy is here –*

[DEFENSE COUNSEL]: Your Honor, I don't really understand, I understand but I don't see how that they are going to be able to call this gentleman to the stand. I'm going to accuse him of being –

THE COURT: And I'm going to advise him of his 5th amendment right and so it's just going to shut down.

[DEFENSE COUNSEL]: *I think he's probably going to take the 5th amendment right. I don't know what he's going to do but I guess the state has a right to call him.*

[PROSECUTOR]: I don't either, Judge, until I talk with him, and that may resolve the issue for both sides.

THE COURT: And I don't know the answer to this either, but *I feel like what you are saying is relevant and I think you have a right to pursue that defense. I can see how it's going to potentially end up resolving just that way because of the fact that he might take the 5th, but I still think that I'm inclined–since your client is not in custody I'm inclined to grant their motion to continue to see if they can get him*

*here*, and what I will do is I will set it for trial rather quickly, and if they can't secure his appearance then they can't, but *if they secure his appearance it might resolve in your client's favor anyway*.

[DEFENSE COUNSEL]: Right.

THE COURT: I mean they might talk to him and who knows what he might say.

At no time did the trial court ever rule that she would allow the admission of the conviction documents without the calling of either Mr. Rogers or the appellant to connect the document with someone alleged to have sold the appellant the stolen truck. She had merely ruled that the evidence might become relevant and granted the state a continuance to attempt to procure the witness's presence so that he would either help to resolve the case short of trial, or to testify or assert his 5th Amendment privilege not to testify at trial. The trial was continued for two months for that purpose, and on the day of trial after the selection of the jury there was a discussion between the trial judge and the attorneys regarding several trial and witness issues, but no mention was made of introducing a judgment of conviction for a David Randy Rogers without any testimony making that document relevant.

*Admissibility of certified copies of the conviction.*

There is no question that a certified copy of David Randy Roberts' conviction would qualify as an exception to the rule against hearsay, either as a public record pursuant to Tenn. R. Evid. 803(8) or as a judgment of previous conviction pursuant to Tenn. R. Evid 803(22). The document would also be self-authenticating pursuant to Tenn. R. Evid 902(4) and would need no witness to testify to its authenticity. However, before it may be admitted, it must be relevant to some issue at trial. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Trial courts have a wide latitude of discretion in determining whether evidence is relevant. *See State v. Dellinger*, 79 S.W.3d 458, 485 (Tenn. 2002) (appendix); *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Porterfield*, 746 S.W.2d 441, 450 (Tenn. 1988). There is an abuse of discretion only when the trial court has "applied an incorrect legal standard, or reached a decision which is against logic or reasoning," resulting in an injustice to a defendant. *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997). In the instant case, without the testimony of David Randy Roberts as a witness or the testimony of the appellant that he was the same man who sold the appellant the stolen truck, there could be no showing that the David Randy Roberts who was convicted of the theft of a Chevrolet Silverado was the same person who allegedly sold the stolen 1993 Ford Ranger to the appellant. Even if such a showing could be made, the conviction would be completely unconnected to the theft of the truck in question at trial. "Evidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular

-6-

occasion," except the character of the accused, the victim or a witness. Tenn. R. Evid. 404(a). If David Randy Roberts had been called as a witness by either side, the conviction could have been used to impeach his credibility pursuant to Tenn. R. Evid. 609. However, as neither side called him as a witness, the conviction was correctly excluded by the trial court as not relevant to any issue at trial.

*Due Process Right to Present a Defense*

Even though the conviction was properly found to be inadmissible by the trial judge, a defendant in some situations may have a constitutional right to present a defense by introducing inadmissible evidence. Tennessee courts have held that in deciding whether this right exists in a particular case, three factors are to be considered: whether 1) the excluded evidence is critical to the defense; 2) the evidence bears sufficient indicia of reliability; and 3) the interest supporting exclusion of the evidence is substantially important. *State v. Flood*, 219 S.W.3d 307, 315-16 (Tenn. 2007); *State v. Brown*, 29 S.W.3d 427, 433-34 (Tenn. 2000) (*citing Chambers v. Mississippi*, 410 U.S. 284, 298-301, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)) ; *see also State v. Powers*, 101 S.W.3d 383, 397 (Tenn.) , *cert. denied*, 538 U.S. 1038, 123 S. Ct. 2083, 155 L. Ed. 2d 1071 (2003). In the instant case, the evidence in question is hardly crucial to the defense, as it involves a conviction of a person who may have had absolutely no involvement with the stolen truck in question. Although the judgment of conviction itself has a high indicia of reliability, no showing was made that the person convicted had anything to do with the stolen truck. The interest supporting exclusion of this type of evidence is substantially important, as unless the conviction could be connected to a person having involvement with the issues at trial, this type of evidence could be introduced merely to confuse the jury, and offenders would be free to create car titles and transact business using names of convicted car thieves who had no involvement in the crime, solely for the purpose of thwarting law enforcement. This court finds that the exclusion of the theft conviction in question did not deprive the defendant of the right to put on a defense or render his trial fundamentally unfair. His constitutional right to due process was therefore not violated.

**Alternative Sentencing**

The appellant does not challenge the length of his sentence, but only its manner of service. After the briefs were submitted by the State and the appellant in this appeal, the Tennessee Supreme Court adopted a new standard for review of trial court decisions regarding the manner of service of a sentence in *State v. Caudle*, 388 S.W.3d 273 (Tenn. 2012), which cited its recent holding in *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012), that when the 2005 amendments vested trial courts with broad discretionary authority in the imposition of sentences, *de novo* appellate review and the "presumption of correctness" ceased to be relevant. Instead, sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a "presumption of reasonableness."

At the sentencing hearing, the appellant requested diversion, or failing that,

probation. The probation and parole officer testified that she tried to contact the appellant for four months to complete the presentence report, without success, and finally filed it without contact from him. The appellant gave no reasonable explanation for his lack of cooperation. He testified that he did not know the truck was stolen when he bought it from Mr. Rogers for somewhere between $300 to $500. He also admitted, and the presentence report reflected, that he had a prior felony conviction for the sale of cocaine, for which he had been placed on probation, and that he had violated his probation by using illegal drugs and had been ordered to perform community service in lieu of incarceration. After hearing his testimony, the trial court requested that the appellant submit to a drug test, which was given immediately, and the probation officer who administered the test testified that the appellant "was positive for amphetamines, meth, benzos and marijuana." The appellant then resumed the stand and testified that although he had a valid prescription for "Benzidenes," he admitted that he had an ongoing problem with abusing drugs, which he was fighting. When asked by his attorney if he thought he could conquer his drug problem with the right kind of treatment, he stated "I would like to think so, sir."

The trial court considered the principles of sentencing, finding correctly that she had no jurisdiction to consider diversion. There was no "certificate from the Tennessee bureau of investigation stating that the defendant does not have a prior felony or Class A misdemeanor conviction." Tenn. Code Ann. § 40-35-313(a)(3)(A). She also found that he was not amenable to correction because of his prior violation of probation due to illegal drug use, his failure to cooperate with the preparation of the presentence report for his present sentencing hearing, his continued use of illegal drugs and his lack of credibility.

Applying the standard of review set out in *Caudle*, this court finds the trial court's findings fully supported by the record. The trial court did not abuse her discretion in denying the appellant an alternative sentence and ordering that he serve his one year sentence in the Department of Correction.

CONCLUSION

For the reasons set forth above, this court finds that the appellant's due process rights were not violated when the trial judge properly excluded evidence of a prior conviction of a non-witness during trial and that the appellant was properly denied an alternative sentence to incarceration.

_____
CHRISTOPHER CRAFT, SPECIAL JUDGE