
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 8, 2016

**STATE OF TENNESSEE v. JAMES ALLEN BALLEW**

**Appeal from the Criminal Court for White County**
**No. 2012-CR-5363      David A. Patterson, Judge**

_____

**No. M2016-00051-CCA-R3-CD**

_____

In this second appeal of the amount of restitution ordered in a Class E felony theft case, the defendant, James Allen Ballew, appeals the $36,473.00 at the rate of $50 per month that the trial court ordered he pay to the victim lumber company, arguing that the amount is unreasonable given the evidence of the victim's losses presented at the second restitution hearing, the two-year length of his sentence, and his financial resources and future ability to pay. The State concedes that the trial court erred by imposing an amount of restitution that the defendant could not reasonably be expected to pay and by ordering a payment schedule that exceeds the length of the sentence. Following our review, we reverse the judgment of the trial court with respect to restitution and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**
**and Remanded**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Billy K. Tollison, Sparta, Tennessee, for the appellant, James Allen Ballew.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Philip Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The defendant was indicted by the White County Grand Jury for theft of property valued at $10,000 or more but less than $60,000, a Class C felony, based on his theft of

motors from his employer, White County Lumber Company. On January 29, 2013, he pled guilty to theft of property valued at $500 or more but less than $1000, a Class E felony, in exchange for a two-year sentence on probation and the payment of restitution, with the amount to be set by the trial court at a later hearing. See State v. James Allen Ballew, No. M2014-00378-CCA-R3-CD, 2015 WL 1059067, at *1 (Tenn. Crim. App. Mar. 9, 2015).

Following the restitution hearing, the trial court took the matter under advisement. The trial court later entered an amended judgment which reflected that the amount of restitution to be paid to White County Lumber Company was $11,000. Id. at *2. The defendant appealed, arguing that the restitution amount was unreasonably high and unsupported by the evidence. Because the judgment was silent as to payment terms and there was no indication that the trial court considered the defendant's ability to pay, this court reversed and remanded to the trial court "for a new restitution hearing to determine the restitution amount, Defendant's ability to pay, and the payment terms." Id. at *3.

At the second restitution hearing, Ronald Thompson, who worked in maintenance at the lumber company, identified from photographs fifty-five motors belonging to the company that the defendant had sold for scrap to Cooper's Recycling. He said the company was able to recover twenty-five of those motors, but only two of them were still in working condition. On cross-examination, he acknowledged his only proof that the motors had belonged to the lumber company was his personal identification of the motors as ones he had personally handled and recognized; the company had kept no inventory and had recorded the serial number of only one of the recovered motors, which had been brand new.

Rex Holman, a handyman at the lumber company, identified a list he had prepared of the replacement values of the motors that had been stolen. Mr. Holman testified that the total replacement value of the motors was $36,953, from which he had subtracted $480, the value of the two motors that were recovered in working condition, for a total replacement cost or restitution value of $36,473. On cross-examination, he explained that he had obtained his values by contacting "Slatton's Enterprise" and getting a quotation for the price of a "useable motor" to replace each stolen motor. He further explained that some of the motors were very uncommon and therefore extremely hard to replace. Upon questioning by the trial court, he testified that, with the exception of three or possibly four motors which had just been uncrated, all of the stolen motors had been used.

Curtis Mills, the manager of Slatton Electric, testified that the list prepared by Mr. Holman contained his estimation of the replacement value of each of the electric motors identified in the photographs, for a total of $36,953. He said he had inspected the twenty-

five recovered motors and found that only two were in working condition. He valued one of those working motors at $375 and the other one at $75, for a total of $450.[1] On cross-examination, he acknowledged that he had not investigated what it would cost to repair the non-working motors. He further testified that the replacement costs he had quoted were for new motors, explaining that some of the motors were so popular that they were unable to keep used inventory in stock, while it was unlikely that used replacement motors could be found for some of the more uncommon motors.

The fifty-two-year-old defendant testified that he currently had no income because he had not worked anywhere, with the exception of an occasional odd job, since his employment ended at White County Lumber. He said he received food stamps and made too little to file income taxes. He testified that he had only a seventh grade education, that all the jobs he had held in the past were as a manual laborer, and that he was "not really" capable of any other kind of work. As for his physical health, he stated that he saw a physician on a regular basis for ongoing back problems that resulted from a deer hunting accident years earlier in which he had fallen from a tree. Finally, he testified that he currently had no ability to pay any restitution and did not foresee any ability to do so in the future.

Following the defendant's testimony, defense counsel informed the court that the defendant had already completed his two years of probation and argued that he would be unable to pay any amount of restitution. At the conclusion of the hearing, the trial court ordered that the defendant pay restitution of $36,473 at the rate of $50 per month. Apparently accepting defense counsel's statement that the defendant had already completed his probationary term, the court observed that the order of restitution should likely be converted to a civil judgment, noting that "[i]t may be that the [S]tate needs to look to convert this to a civil judgment against the defendant as probation is not appropriate any longer[.]"

## ANALYSIS

The defendant contends that the amount of restitution is unreasonable, arguing, among other things: that he has no current income and poor prospects for finding meaningful employment in the future given his age, health, and limited education and work history; that the value given to the victim's losses was erroneously inflated based on the replacement cost of new, rather than used, motors; and that the trial court erroneously ordered a payment schedule that would extend far beyond the expiration of his sentence in order for him to pay the complete restitution amount. The State concedes that the trial

---

[1] We recognize the discrepancy between this witness's $450 valuation of the working motors and the previous witness's valuation of $480.

court ordered an amount of restitution that the defendant could not reasonably be expected to pay and lacked the authority to order a payment schedule that extended beyond the length of the sentence. The State also seeks guidance from this court on the trial court's authority on remand to order any amount of restitution in the event that the defendant's probationary term has, in fact, been completed.

We review a trial court's order of restitution under an abuse of discretion standard, with a presumption that the trial court's ruling was reasonable. See State v. John N. Moffit, No. W2014-02388-CCA-R3-CD, 2016 WL 369379, at *4 (Tenn. Crim. App. Jan. 29, 2016), perm. app. denied (Tenn. June 24, 2016) (citing State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012); State v. David Allen Bohanon, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *4 (Tenn. Crim. App. Oct. 25, 2013)). A trial court's exercise of discretion will only be reversed on appeal if the court "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" State v. Robinson, 146 S.W.3d 469, 490 (Tenn. 2004) (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)); see also State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999).

Tennessee Code Annotated section 40-20-116 mandates restitution of either the property or, if that is not possible, the value of the property in cases in which a defendant has been convicted of "stealing or feloniously taking or receiving property[.]" Tenn. Code Ann. § 40-20-116(a) (2012). "The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." State v. Johnson, 968 S.W.2d 883, 885 (Tenn. Crim. App. 1997). Tennessee courts are encouraged to order restitution when appropriate, see Tenn. Code Ann. §§ 40-35-102(3)(D), -103(6), but trial courts "are without inherent power or authority to order payment of restitution except as is derived from legislative enactment." State v. Alford, 970 S.W.2d 944, 945 (Tenn. 1998).

When ordering restitution as a condition of probation, the trial court must consider not only the victim's losses, but also the financial resources and future ability of the defendant to pay. Tenn. Code Ann. § 40-35-304(d); State v. Bottoms, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). This is because "[a]n order of restitution which obviously cannot be fulfilled serves no purpose for the [defendant] or the victim." Johnson, 968 S.W.2d at 886. The trial court shall specify the amount and time for payment and may permit payment or performance of restitution in installments. Tenn. Code Ann. § 40-35-304(c). The court may not establish a payment or schedule that extends beyond the expiration of the sentence. Id. § 40-35-304(g)(2). If, however, any portion of the ordered restitution remains unpaid at the expiration of the payment period, it may be converted to a civil judgment. Id. § 40-35-304(h).

-4-

We conclude that the $50 per month ordered by the trial court was reasonable but that the defendant, a fifty-two-year-old man with a seventh grade education and an employment history consisting only of manual labor, could not reasonably be expected to pay restitution of $36,473, regardless of the length of his probationary term. The trial court, thus, erred in ordering that amount of restitution. The trial court also erred in relying on the portion of the statute that allows for the conversion into a civil judgment of any amount of restitution that is left unpaid at the expiration of a defendant's sentence. That statutory provision does not release a trial court from the obligation to set an amount of restitution and payment terms that the defendant can reasonably be expected to satisfy. This court addressed a similar issue in State v. Terence Alan Carder, No. W2009-01862-CCA-R3-CD, 2010 WL 5272938 (Tenn. Crim. App. Dec. 10, 2010), in which the trial court, relying on the fact that any unpaid amount of restitution may be converted to a civil judgment, purposefully ordered an amount of restitution that the defendant could not possibly pay within the length of his sentence under the payment schedule ordered by the court. This court wrote:

> We would further point out that the trial court's reliance upon the portion of the statute which allows for conversion of an unpaid restitution amount to civil judgments is misplaced. That statute speaks to the ordered amount of restitution in a case; it was not intended to serve as a "free pass" in civil court to ensure a judgment of loss. The victim should pursue this matter directly in civil court and establish his case before a judge with jurisdiction to determine civil judgments, which the trial court initially recognized during his statement to the victim at the first hearing. It remains the function of the civil court to determine the judgment amount which should be entered against the defendant.

Id. at *6.

Although not raised by the defendant, the State cites State v. Carolyn Wheeler, No. M2001-00337-CCA-R3-CD, 2002 WL 440230, at *1 (Tenn. Crim. App. Mar. 18, 2002), which held that a trial court lacks statutory authority to order restitution following the expiration of a defendant's sentence, to question whether the trial court has jurisdiction to order restitution on remand. The State notes, however, that there is nothing in the record, other than the statement of counsel, to indicate that the defendant's sentence has, in fact, expired. The State further notes that the trial court was acting in accordance with this court's directive from the first direct appeal in conducting the new restitution hearing and, therefore, requests clarification on the trial court's authority in the matter.

We agree with the State that it is unclear from the record whether the defendant's probationary term has expired. We, therefore, reverse and remand to the trial court for a determination of how many months, if any, are remaining on the defendant's sentence. Should there be any time remaining on the defendant's sentence, we direct the trial court to enter an amended judgment reflecting a restitution order in the amount of $50 multiplied by the number of months remaining in the sentence. In the event that the defendant has completed his probation, we direct the trial court to enter an amended judgment reflecting a restitution order of $0. Given the defendant's poor financial condition and limited prospects for lucrative employment, we find it unnecessary to address whether our directive to the trial court to hold a new restitution hearing tolled the probationary period such as to allow the trial court to retain jurisdiction in the case after the probationary period would have normally expired.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we reverse the judgment of the trial court as to restitution and remand for further proceedings consistent with this opinion.

_____
ALAN E. GLENN, JUDGE