IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 23, 2022

**STATE OF TENNESSEE v. CLIFTON LAWRENCE STILL**

**Appeal from the Criminal Court for Knox County**
**No. 116933 Steven Wayne Sword, Judge**

_____

**No. E2021-01009-CCA-R3-CD**

_____

Pursuant to a plea agreement, the Defendant-Appellant, Clifton Lawrence Still, entered a guilty plea to one count of kidnapping, a Class C Felony, and received an eight-year sentence, with the manner of service of the sentence to be determined by the trial court. Following a sentencing hearing, the trial court denied the Defendant's application for alternative sentencing and ordered the eight-year sentence to be served in confinement in the Tennessee Department of Correction. On appeal, the Defendant argues the trial court abused its discretion in denying alternative sentencing. Upon review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Richard C. Stooksbury III, Knoxville, Tennessee, for the Defendant-Appellant, Clifton Lawrence Still.

Herbert H. Slatery III, Attorney General and Reporter; Hannah-Catherine Lackey, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ashley McDermott, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On January 15, 2020, the Defendant was charged by indictment with six counts of aggravated kidnapping, a Class B felony, and one count of child abuse, a Class A misdemeanor. On March 25, 2021, he agreed to enter a guilty plea in count one to

kidnapping, a Class C felony, a lesser included offense of aggravated kidnapping. He also agreed to plead outside his respective sentencing range as a Range II multiple offender, with the sentence to be served at thirty-five percent. As a condition of his sentence, the Defendant agreed to no contact with the victim and to be placed on the Sex Offender Registry. In exchange for the above concessions, the State agreed to dismiss the remaining counts of the indictment. The State anticipated the Defendant would seek probation at sentencing. The following facts were provided by the State in support of the guilty plea and stipulated to by the defense:

> [On June 20, 2019], the 14-year old victim and her family were at home in their apartment on Badgett Drive here in Knoxville. They were not acquainted with [Still], who lived close by.

> At approximately 12:10 a.m. the victim went out to her mother's car in the parking lot to get her purse. As the victim was locking the car back, [the Defendant] came up behind her, grabbed her by the arms and began pulling her up a hill behind the apartment. He trapped her arms behind her so that she was unable to fight him. The victim began to scream her mother's name, but [the Defendant] told her to be quiet, as he continued to drag her up the hill. The victim continued to attempt to struggle with [the Defendant] until she was able to break away and she hid in the bushes.

> The victim's mother realized not long after that she'd been gone too long from the apartment and she and the victim's brother began to search for her, asking other neighbors if anyone had seen her. The neighbors joined in the search when they realized what was going on. When the victim's mother began to walk the neighborhood screaming her name, the victim heard her mother and ran from the bushes. The victim was traumatized and had urinated on herself as a result of the attack.

> Shortly thereafter, investigators with the Knoxville Police Department identified [the Defendant] as a suspect. And the victim picked him out of a photo array as the man who had attacked her.

The trial court advised the Defendant of his rights attendant to the entry of a guilty plea, and the Defendant affirmed that he understood them. The trial court then determined that the Defendant entered the guilty plea knowingly and voluntarily and set the matter for a sentencing hearing.

At the top of the August 12, 2021 sentencing hearing, the State reiterated the facts supporting the guilty plea, the victim's age of fourteen years at the time of the offense, and the fact that the Defendant was a "stranger" to the victim. The State admitted into evidence

as exhibit one the Defendant's presentence report which reflected, in relevant part, a prior history of criminal convictions including a 2016 conviction of domestic violence and two convictions of casual exchange of drugs, one from 2007 and the other from 2010. The Strong-R assessment, included in the presentence report, described the Defendant as moderate risk with high or moderate needs in residential attitudes/behaviors, employment, education, and aggression. As victim impact evidence, the State offered an email from the victim's mother into evidence as exhibit two, which stated, in pertinent part, as follows:

> On the night [of the offense], my daughter [] asked if she could go out to the car, which is right at our back door, to get her purse out of the car, in which I allowed her, per usual. We had been living in our neighborhood for at least six years and have never had any problems. As such, my daughter grabs her purse. And as she turns around to walk back towards the house was grabbed by [the Defendant], [who] tried to drag her up the hill, where we later found out he resided. If my daughter hadn't fought him off, she probably wouldn't be with us today.

> At almost two years later, my daughter will not go outside alone . . . especially not at night for months, maybe even a year. She would just have breakdowns out of the blue. This situation still haunts her all the time and, also, the rest of the family. I sometimes, myself, cry myself to sleep thinking what could have happened that night. [The Defendant] has definitely put fear that we would never [have] had in our hearts and almost made my worst nightmare as a parent come true.

The psychosexual risk assessment, exhibit three, showed that the Defendant denied involvement with the offense. Although he reported being in the same area as the victim at the time of the offense, he said he was looking for his glasses he had lost earlier in the day. He claimed he only entered a guilty to plea to avoid trial. The Defendant also omitted two arrests from his criminal history, a misdemeanor theft and aggravated assault. He disclosed occasional use of Valium and Xanax, but he failed to include this information in the presentence report. The Defendant also disclosed additional criminal behavior including arrests for driving under the influence, failure to appear, failure to pay child support, and domestic assault.

Although the Defendant had been hospitalized in 2018 for attempted suicide, he claimed this was an isolated incident. He had a limited support system with a high range of risk for interpersonal skill deficits and poor adult attachment. He posed a medium range of risk for violence toward others and a low to moderate range of risk for hostility toward others. He denied any sexual interest in prepubescent children. However, objective tests showed the Defendant had a strong sexualized fixation response to male and female adolescents age thirteen to seventeen, which was significantly above normal, and

sexualized interest in males age six to twelve and females age two to five. The report concluded the Defendant had a moderate risk level to reoffend, and a poor prognosis for treatment based on his inability to accept responsibility for the offense. Based on all three exhibits, the State argued that the Defendant would not be successful on probation and therefore recommended he be required to serve his eight-year sentence in confinement.

Defense counsel explained to the trial court that the Defendant did not fully understand what he was doing during the psychosexual evaluation and that the Defendant was "embarrassed" about "owning up to" the offense. Defense counsel advised the trial court that "if [the Defendant] had to go through treatment, he was willing to admit what happened." Based on the Defendant's compliant behavior since the offense, the recommendation of outpatient treatment in the psychosexual report, and the moderate risk to reoffend assessment in the presentence report, defense counsel argued the sentence should be served on supervised probation.

The trial court asked if the Defendant wished to make a statement, and he initially declined. Even though the length of the sentence had been determined previously by the plea agreement, the State then asked the trial court to "enhance" the Defendant's sentence because the offense was committed "for pleasure or excitement," the vulnerability of the victim given her age, and "national news" of other individuals who were "similarly situated." Defense counsel disagreed and clarified that the instant case did not involve sexual contact and the psychosexual assessment showed "no sexual boundary issues."

Following a brief recess, defense counsel advised the trial court that the Defendant had changed his mind and now wished to address the trial court and the victim's family. The Defendant then apologized "for not being honest with the [psychosexual assessment] doctor" and explained he would accept any treatment. He also apologized to the victim's family for the "grief and trauma" he had caused them by his actions.

In ordering the Defendant to serve his sentence in confinement, the trial court acknowledged that while the State's arguments regarding enhancement and mitigating factors were informative, they pertained to the length of the sentence which had been determined by the plea agreement. The trial court then engaged in an extensive analysis and determined that confinement was necessary to avoid depreciating the seriousness of the offense, and due to the Defendant's lack of potential for rehabilitation. The trial court found the Defendant was not amenable to rehabilitation based upon his dishonesty in the psychosexual report and his failure to give a report of the offense to the presentence investigator. The trial court determined, consistent with the conclusions in the psychosexual report, that the Defendant would be unable to complete long-term supervised probation due to his inability to accept responsibility for his actions in the offense. The Defendant filed a timely notice of appeal, and this case is now properly before this court for review.

**ANALYSIS**

The Defendant contends the trial court erred in denying alternative sentencing and ordering a sentence of confinement. Specifically, he claims he satisfied the criteria to be considered a favorable candidate for alternative sentencing, and the State failed to rebut the statutory presumption. See State v. Ashby, 823 S.W.2d 166 (Tenn. 1991) (citing T. C. A. § 40-35-102(6)). He further insists that the trial court abused its discretion in determining (1) that confinement was necessary to avoid depreciating the seriousness of the offense; and (2) given the Defendant's allocution and in-court apology, that he was not amenable to rehabilitation based on his failure to accept responsibility for the offense to the psychosexual evaluator. In response, the State submits the Defendant is not eligible for the statutory presumption for alternative sentencing because he agreed to be classified as a Range II offender as part of the plea agreement. The State also asserts the trial court properly imposed a sentence of confinement. We agree with the State.

We review the length and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. This standard of review also applies to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). A trial court only abuses its discretion when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997). The defendant has the burden of showing the impropriety of the sentence on appeal. T.C.A. §40-35401(d), Sentencing Comm'n Cmts. "The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5). The trial court must also impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4). Finally, the "trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." State v. Sihapanya, 516 S.W.3d 473, 476 (Tenn. 2014).

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). A trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Tennessee Code Annotated section 40-35-102(6)(A) states that a defendant who does not require confinement under

subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). Id. Tennessee Code Annotated section 40-35-303 states, in pertinent part, that "[a] defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less[.]" T.C.A. §40-35-303(a) (2015). A defendant has the burden of establishing that he is suitable for probation by "demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting State v. Housewright, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). When considering whether to order full probation, the trial court may consider "the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes." State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996) (citing T. C. A. §§ 40-35-210(b)(4), -103(5), -103(1)(B) (1990)).

In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court should consider whether:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

As an initial matter, under the 2005 amendments to the sentencing guidelines, defendants are no longer entitled to the statutory presumption for alternative sentencing as the guidelines are advisory only. Carter, 254 S.W.3d at 347. Moreover, despite his status as a standard offender, the Defendant agreed to enter a guilty plea as a Range II offender to an eight-year sentence to be served at thirty-five percent release eligibility. Ordinarily, the Defendant would be considered a favorable candidate for alternative sentencing because his sentence was ten years or less. However, the State correctly points out that in agreeing to be sentenced as a Range II offender, the Defendant agreed to classification as a multiple offender for all purposes, including alternative sentencing. See State v. Homer L. Evans, No. E2000-00069-CCA-R3-CD, 2001 WL 274069, at *4 (Tenn. Crim. App. Mar. 20, 2001) ("Although 'Range I' is a sentencing range, see T.C.A. § 30-45-112, not an

offender classification, the multiple offender classification is the only classification that receives a sentence within Range II."). Multiple offenders are not presumed favorable candidates for alternative sentencing. Id.; see also T.C.A. § 40-35-102(6); -106. Accordingly, the Defendant was not eligible to be considered as a favorable candidate for alternative sentencing under the statute because he pled guilty and agreed to be sentenced as a Range II offender.

In any event, based on the record, we conclude that the trial court did not abuse its discretion in denying probation and sentencing the Defendant to confinement. In reaching its sentencing decision, the trial court expressly considered the factors in Tennessee Code Annotated section 40-35-210(b) and the sentencing principles in Tennessee Code Annotated sections 40-35-102 and 103. The record shows the trial court determined that confinement was necessary to avoid depreciating the seriousness of the offense and due to the Defendant's lack of potential for rehabilitation. In considering whether confinement was necessary to avoid depreciating the seriousness of the offense, the trial court noted:

> [T]his [was] an extremely serious offense. Even though the child was obviously psychologically harmed and emotionally harmed, fortunately, she was not physically harmed. Now, what would have happened had she not been able to get away and screamed? We may never know. But this is every parent's worst nightmare. I can't imagine the circumstances of a case where there wasn't actually physical harm that can be any worse than this.
>
> What you did, [Defendant], to this child, she will never get past that in her life. This is something she will likely deal with as an adult with nightmares. And we don't have any psychological reports on her, but just common sense tells us that this is something that will be with her the rest of her life.
>
> So, the Court finds that the seriousness of this offense is as high as a kidnapping can be without actually being physical injury to the victim.

In assessing the Defendant's potential or lack of potential for rehabilitation for treatment, the trial court observed as follows:

> So that's the one that the Court has to look closely to the Strong R assessment in the PSI, the Defendant's history and behavior and the psychosexual risk assessment that was completed by [the evaluator].
>
> And so as I'd mentioned, the strong R assessment came back as a moderate risk. There wasn't really anything that stood out to me too much in that; a couple of risk factors that were somewhat concerning, but the psychosexual is much more informative to the Court.

And so although [the Defendant] has allocated after the last couple of hours and said he's sorry about it, he has given no explanation to the Court about what drove this behavior. And he denied it to [the evaluator]. And that is—besides the actual circumstance of this case—the one thing that is most concerning to the Court, because I have no idea, Mr. Still why on earth you engaged in this behavior. There are many nefarious reasons I can think of and no innocent reasons I can think of.

. . . .

But I share many of [the psychosexual evaluator's] concerns. . . . [D]ue to the client's level of honesty on the assessment, possible Court leverage, the client's outpatient treatment has a poor prognosis. His prognosis for long-term probation requiring him to complete treatment appears poor to fair, due to being in complete denial of the offense. Without leverage from the Court of probation, the client's prognosis is considered poor, as he would not attend treatment on his own.

We conclude that the trial court did not err in finding that the Defendant failed to carry his burden in establishing his suitability for probation. See State v. Trotter, 201 S.W.3d 651, 653 (Tenn. 2006) (noting that the seriousness of the offense alone may justify a trial court's denial of alternative sentencing where offense is especially violent, horrifying, or reprehensible); State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999) (noting that a defendant's rehabilitation potential and the risk of repeating criminal conduct are fundamental in determining whether probation is appropriate); State v. Kimberly J. Hill, No. W2018-01771-CCA-R3-CD, 2020 WL 473415, at *8 (Tenn. Crim. App. Jan. 29, 2020) (citing Sihapanya, 516 S.W.3d at 476) (noting where the trial court does not base its decision solely upon the need for deterrence or solely upon the circumstances of the offense, the Trotter heightened standard of review does not apply). Moreover, because the record reflects that the trial court carefully considered the evidence and the purposes and principles of sentencing prior to imposing a sentence of confinement, the Defendant has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the court's sentence in this case. Caudle, 388 S.W.3d at 280. Accordingly, we uphold the Defendant's eight-year sentence of confinement in the Tennessee Department of Correction.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE