IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 6, 2024

**STATE OF TENNESSEE v. JEFFREY LYNN WILKES**

**Appeal from the Circuit Court for Dyer County**
**No. 22-CR-192       Mark L. Hayes, Judge**
_____

**No. W2023-00619-CCA-R3-CD**
_____

The Defendant, Jeffrey Lynn Wilkes, pled guilty in the Dyer County Circuit Court to burglary, a Class D felony, and was sentenced by the trial court as a Range II, multiple offender to five years in the Tennessee Department of Correction, to be served consecutively to his prior Tennessee sentences and to his sentence in a pending Florida case. On appeal, the Defendant argues that the trial court erred by denying a sentence of split confinement that would have enabled the Defendant to enter a rehabilitative program to treat his drug addiction. Based on our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which J. ROSS DYER and KYLE A. HIXSON, JJ., joined.

Kendall Stivers Jones, Assistant Public Defender, Franklin, Tennessee (on appeal) and Patrick R. McGill, Assistant Public Defender, Dyersburg, Tennessee (at sentencing hearing), for the appellant, Jeffrey Lynn Wilkes.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Timothy J. Boxx, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

On August 8, 2022, the Dyer County Grand Jury returned a two-count indictment charging the Defendant with burglary, a Class D felony, and theft under $1,000, a Class A misdemeanor, based on the Defendant's February 5, 2022 entry into a closed Mexican restaurant to steal a jug filled with coins. On February 6, 2023, the Defendant pled guilty in the Dyer County Circuit Court to burglary. Pursuant to the terms of his negotiated plea agreement, the theft count of the indictment was dismissed, and the Defendant's sentencing as a Range II, multiple offender was left to the trial court's later determination.

The Defendant's presentence report, which was entered into the record at the April 4, 2023 sentencing hearing, reflected that the fifty-two-year-old Defendant had a lengthy criminal record that included ten misdemeanor convictions since the date of the instant offense. The report also reflected that the Defendant had an active capias, issued on November 30, 2020, out of Broward County, Florida regarding a disorderly conduct charge, and had an active arrest warrant for domestic battery out of Indiana. The report further reflected that the Defendant had twice had his parole revoked after release from Tennessee Department of Correction custody, in 1998, and again in 1999.

The Defendant reported that he had obtained his high school diploma and completed three years at Lane College in Jackson, had been abusing alcohol "during practically his entire lifetime[,]" had used marijuana on a daily basis for the past twelve months except when incarcerated, had used crack cocaine "every chance [he] got" over the past twelve months, and at any time during the past twenty years had been abusing at least one illegal drug. The Defendant reported that he had been diagnosed with bipolar disorder and depression, had never received any type of treatment or counseling for his drug and alcohol abuse issues, and had been "begging" for drug treatment for the past year. The Defendant also reported on March 9, 2023, to the officer who prepared the presentence report that he had spoken to a representative of Safe Harbor, a drug treatment facility. However, as of that date, the Defendant had not officially applied for entry into their program.

The Defendant's risk assessment resulted in a score of high, with high needs in residential, education and attitudes/behaviors, and moderate needs in alcohol/drug use. Under "Criminogenic Needs" was the information that the Defendant was impulsive and generally did not think before acting; that his motivation for criminal behavior included anger, obtaining drugs, and a reaction to conflict or stress; that he had a conditional respect for personal property; and that he believed he would succeed on supervision only if external controls were in place. Under the "Other Factors" portion was the information that his

behavior and verbalizations demonstrated he had not made a connection between action and consequences; that he lacked social skills; that he had limited problem solving skills; that his motivation for criminal behavior included money or material gain and being impulsive or opportunistic; that he was indifferent toward authority and sometimes compliant; and that he verbalized his need to change his lifestyle but was not taking any specific steps toward change.

The Defendant testified at the hearing that his criminal history, which he acknowledged included "some pretty serious cases" twenty years ago, was the result of "[b]ad decisions" and "[d]rug use." He agreed there was a fifteen-year-gap in his criminal history and said that during that time he had been motivated to stay "clean" by his marriage and his children, who were currently twenty-eight, twenty-four, and twenty-two years old. He stated that he had three grandchildren, and that they were part of his motivation to again become drug free. He explained that he had resumed using drugs approximately two years earlier following a separation from his wife and the death from cancer of his older brother, who had been a father-figure to him and who had died in his arms. He stated that, after his brother's death and his separation from his wife, he had become severely depressed and turned back to drugs.

The Defendant testified that he had reached rock bottom, suffering from both homelessness and hunger. He said he had attempted to solicit work in Newbern by asking people if he could wash their vehicles and was "banned from every store, every place, even to get food from." He stated that he was unfairly accused of panhandling, and that businesses, which did not like his soliciting of work in their parking lots, banned him from their premises. He denied that he had "picked up several charges in Newbern" due to his actions, testifying that he had "picked 'em up and dropped 'em, because [he had] never been convicted of . . . the majority of 'em." He acknowledged, however, that he had two or three convictions for trespass.

The Defendant testified that he was addicted to "[c]ocaine, alcohol, marijuana, anything." He stated that his desire was to enter a lengthy rehabilitation program, and that he wished to watch his grandchildren grow up, reconcile with his wife, and no longer be homeless and hungry. He testified that he had talked to several representatives of different rehabilitation facilities and had been accepted at "Aspell." His goal was to get clean, "[d]o after care and get a job and take care of [his] family[.]" He said he accepted full responsibility for his actions and explained that he committed the instant offense because he was hungry. Finally, he requested that the trial court take into consideration that it had been twenty-one years since his last felony, and he asked that the trial court sentence him to four years in a rehabilitation facility.

On cross-examination, the Defendant denied that he had been banned from businesses for stealing. The prosecutor then asked if he recalled a recent incident at the Farmhouse Restaurant in Newbern where the employees offered him a gift of food because he complained of hunger, only to have him steal from them when they turned their backs to retrieve the food. The Defendant responded that he had not been convicted in that incident and that the judge "threw that out." He acknowledged he had been convicted on March 1, 2023, in Dyersburg Municipal Court of failure to appear, may have been convicted on January 13, 2023, in Newbern Municipal Court of evading arrest, was convicted on January 13, 2023, in Newbern Municipal Court of criminal trespass, was convicted on January 3, 2023, in Newbern Municipal Court of criminal trespass, was convicted on December 5, 2022, in Dyersburg Municipal Court for failure to appear, and was convicted in August 2022, of driving under the influence. He either did not recall or disagreed with other convictions in the presentence report consisting of: a December 2022 conviction for resisting stop, frisk and halt; an August 30, 2022 conviction for theft; and August and May 2022 convictions for criminal trespass. The Defendant testified that he had been arrested fifty-two times and that "[i]t might be a little hard to remember all [of his convictions]."

When asked what efforts he had made to enter rehabilitation in the fourteen months since the instant offense, the Defendant responded that he had "looked around, and got [his] mind together, and slacked off a little bit of the drinking and the drugs" in an effort to get sober enough to search for rehabilitation programs. He also explained his failure to start rehabilitation by stating that he had been working.

On redirect examination, the Defendant agreed that all his offenses committed in the past two years were the result of his addiction and his homelessness. He testified that he had been in a "catch 22" situation where he was attempting to ask for work, only to be banned from every store. He repeated that he had talked to representatives of several rehabilitation facilities over the past year but said he faced obstacles in entering a facility due to his having been "[i]n and out of jail," not having anyone other than his father to help him, and not having a telephone.

At the conclusion of the hearing, the trial court found three enhancement factors applicable to the offense: the Defendant's previous history of criminal convictions or criminal behavior in addition to those necessary to establish his range; the Defendant's failure before trial or sentencing to comply with the conditions of a sentence involving release into the community; and the Defendant's having been on unsupervised probation out of the Newbern Municipal Court at the time he committed the instant offense. Tenn. Code Ann. § 40-35-114(1), (8), (13). The trial court found as an applicable mitigating factor that the Defendant's after-hours unauthorized entry into the restaurant neither caused

nor threatened serious bodily injury. *Id.* at § 40-35-113(1). The trial court stated that it had considered alternatives to incarceration and "seriously considered whether or not a furlough to drug rehabilitation [was] appropriate" and found that "it is not appropriate at this time to do that." The trial court, therefore, sentenced the Defendant to five years in the Tennessee Department of Correction, to be served consecutively to all prior sentences, as well as to the sentence in the Broward County, Florida pending case. The trial court waived a fine but ordered restitution of $600 to the Mexican restaurant. Thereafter, the Defendant filed a timely notice of appeal to this court.

## ANALYSIS

The Defendant contends that the trial court erred in denying him a sentence of split confinement that would have enabled him to enter a rehabilitative program for substance abuse treatment. He argues that the trial court failed to consider that he had no past failed efforts at rehabilitation when it determined that a sentence of total confinement was appropriate. He also argues that a prison sentence is not in the best interests of either the Defendant or the community because it will not address the underlying cause of the Defendant's behavior, which he asserts is "substance abuse that led to homelessness and criminal behavior rooted in desperation." The State argues that the trial court acted within its discretion in denying alternative sentencing in light of the Defendant's extensive criminal history and the fact that measures less restrictive than confinement have frequently and recently been applied unsuccessfully to the Defendant. We agree with the State.

This court reviews the length, range, and manner of service imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). The trial court is granted broad discretion to impose a sentence anywhere within the applicable range and the sentencing decision of the trial court will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10.

In determining a defendant's sentence, the trial court is to consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant on his own behalf about sentencing; and (8) the result of the validated risk and needs

assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. § 40-35-210(b); *see also Bise*, 380 S.W.3d at 697-98.

Sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

*Id.* at § 40-35-103(1). In addition, "[t]he sentence imposed should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" *Id.* at § 40-35-103(2), (4). A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citation omitted). The defendant bears the burden of proving that the sentence is improper. Tenn. Code Ann. § 40-35-101, Sentencing Comm'n Cmts.

In imposing the five-year sentence of incarceration, the trial court stated that it had considered alternatives to incarceration and "seriously considered" the Defendant's request for furlough to a drug treatment facility but found that it was not appropriate at that time. The trial court's April 4, 2022 written sentencing findings of fact, in which the trial court checked boxes on a preprinted form, reflect that in ordering the five-year sentence in confinement, the trial court considered, among other things, the sentencing guidelines, the facts and circumstances surrounding the offense, the presentence report, and the considerations involved in determining whether an alternative sentence was appropriate, including the previous actions and character of the Defendant, the Defendant's prior criminal history, whether the Defendant would abide by the terms of probation, and whether the Defendant might reasonably be expected to be rehabilitated, including the risk that he might commit another crime while on probation. Although the trial court did not make lengthy oral findings, its oral findings combined with the written findings of fact reflect that it imposed a within-range sentence consistent with the principles and purposes of the Sentencing Act after considering the appropriate factors in determining whether an alternative sentence should be imposed. Accordingly, we conclude that the trial court did

not abuse its discretion in ordering the Defendant to serve his five-year sentence in the Tennessee Department of Correction.

## **CONCLUSION**

Based on our review, we affirm the judgment of the trial court.

_____
JOHN W. CAMPBELL, SR., JUDGE